# LAMBERT *v.* STATE
[No. 45, October Term, 1949.]

*Decided November 9, 1949.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MAR-KELL, JJ.

*Louis S. Ashman,* with whom were *Ashman & Link* and *Edward D. E. Rollins* on the brief, for the appellant.

*Harrison L. Winter, Assistant Attorney General,* and *Kenneth C. Proctor, Assistant Attorney General,* with whom were *Hall Hammond, Attorney General, Henry L. Constable, State's Attorney for Cecil County,* and *Gifford Scarborough, Assistant State's Attorney,* on the brief, for the appellee.

DELAPLAINE, J. delivered the opinion of the Court.

This appeal was taken by the Rev. Percy K. Lambert, of Elkton, from the judgment of conviction entered upon the verdict of a jury in the Circuit Court for Cecil County for violation of the statute making it unlawful to erect or maintain any sign intended to aid in the solicitation or performance of marriages. Laws of 1943, ch. 532, Code Supp. 1947, art. 27, sec. 444A.

The State charged that on September 1, 1947, defendant maintained a sign containing the name "Rev. P. K. Lambert" at the entrance to his home at 170 East Main Street to aid in the solicitation and performance of marriages. The Court admitted in evidence two photographs of the sign. One was taken on an afternoon in September, 1947; the other on a night in August, when the sign was illuminated by electricity.

The Court also admitted a bulletin of marriage information, which had been issued by defendant. It was shown that 4,000 of these bulletins had been printed for defendant in 1946. After giving information as to minimum ages and other requirements for applicants for marriage licenses, the bulletin contained the following advice: "No magistrate or civil authority is permitted to solemnize matrimony in this State, but I perform non-sectarian wedding services for Catholics and Hebrews which is accepted by their churches at face value. I am the only minister here that offers this service to the public. * * * I do not make a charge, but legal and local expenses in our city, such as rent, phones, secretary, etc., are very high and due to the great number of couples to be served by marriage in Elkton, and in order to render prompt and efficient services to all, the fee has been estimated at $10. Some couples pay more, and a few in desperate circumstances pay less. * * * Applicants be sure to come direct to my home at the address given below. Do not go to the Court House or accept advice from any outsider until you have first received advice from me. This will save you both time and

money. I have been in this business for many years and am considered the most efficient minister in Elkton. My name is at the front door. Turn the knob and walk in. Either myself or my secretary will greet you."

The State showed that thirty ministers performed 1,267 marriages in Cecil County during the month of August, 1947, and that 275 of these were performed by defendant.

Defendant did not testify. His only witness, a next-door neighbor, testified that the sign was at the entrance to defendant's home under the front porch, but admitted on cross-examination that the sign was illuminated by an electric light attached to one of the front posts of the porch about seven feet in front of the door.

*First.* Defendant contended that the indictment was defective because it was not drawn in the exact language of the statute. The indictment charged that defendant displayed signs "intended to aid," whereas the statute forbids signs "any one or more of which is intended to aid." There is no merit in the objection. The general rule, as stated in *State v. Monfred,* 183 Md. 303, 37 A. 2d 912, is that an indictment for a statutory offense is sufficient if it follows the language of the statute and is sufficiently specific to inform the accused of the particular charge on which he is to be tried. Of course, an indictment, whether based upon the common law or upon a statute, must characterize the particular crime and describe it with such reasonable certainty that the accused will be enabled to prepare his defense and, if necessary, plead the judgment as a bar to any subsequent prosecution for the same offense. *State v. Wheatley,* 192 Md. 44, 63 A. 2d 644, 647. In the case at bar the omission of the words "which is" from the language of the statute did not deprive defendant of any necessary information, especially since the State, after a demand for a bill of particulars, specifically mentioned the sign which defendant was charged with displaying.

*Second.* Defendant contended that his conviction by the Court below deprives him of the free exercise of re-

ligion guaranteed by the First Amendment of the Federal Constitution. This contention is not tenable. We have held that the Act of 1943 does not violate the First and the Fourteenth Amendments. *State v. Clay*, 182 Md. 639, 35 A. 2d 821; *Hopkins v. State*, 193 Md. 489, 69 A. 2d 456.

*Third.* Defendant contended that it was error to refuse his testimony that the State's Attorney of Cecil County advised him in 1944, before he erected his sign, that it did not violate the law. For reasons given in *Hopkins v. State, supra*, we reject this contention.

*Fourth.* Defendant objected in the Court below to the testimony of the Rev. Walter A. Hearne, pastor of the Elkton Methodist Church, (1) that defendant was not the pastor of any church in Elkton and did not perform any ministerial duties in this community except the performance of marriages, and (2) that he was not a member of the Cecil County Council of Churches, a ministerial association composed of 32 Protestant ministers. The rule is established that where the defendant in a criminal prosecution is charged with displaying a sign advertising himself as a minister with intention to aid in the solicitation and performance of marriages, evidence that he was not the pastor of any church and did not perform any ministerial duties other than the performance of marriages is admissible. *Sturgill v. State*, 191 Md. 75, 59 A. 2d 763. On the other hand, evidence that defendant was not a member of an association of Protestant ministers is irrelevant and prejudicial. *Hopkins v. State, supra.*

*Fifth.* Defendant contended that the judge erred in admitting photographs of the sign in evidence. There can be no question that the photographs were admissible to show the location, size and appearance of the sign.

*Sixth.* Defendant objected to the evidence as to the number of marriages performed in Cecil County during August, 1947. Although there were thirty ministers who performed the marriages in the county during that period, defendant performed more than one fifth of these

marriages. This evidence was relevant to show that defendant intended to conduct, and was conducting, a marriage business of the type forbidden by the law.

*Seventh.* Defendant objected to the admission of his bulletin of marriage information, because the State had failed to show that he had distributed any of these bulletins within a year prior to September 1, 1947, the date of the alleged offense. But this bulletin was admitted in evidence, not to show the commission of a prior offense, but to show defendant's motive in erecting the sign. The Judge instructed the jury that defendant was not being tried for anything printed on the bulletin, or for the distribution of the bulletin. He explained that it was introduced solely "as something directing the attention of the public to the sign." We hold that it was admissible.

*Eighth.* Defendant objected to the judge's advisory instruction as to the meaning of "beyond a reasonable doubt." After instructing the jury that the State must prove the commission of the crime beyond a reasonable doubt and to a moral certainty, the judge said: "That doesn't mean, however, that the State must prove those elements of a crime to an absolute or mathematical certainty. It means such evidence as you would act upon in a matter involving important affairs in your life or your business or with regard to your property. If the evidence is sufficient that you would act upon it in a very important matter in your own lives, then it is sufficient to convict in a criminal case."

It is a fundamental rule that the jury in a criminal case, before finding a verdict of guilty, must be satisfied of the guilt of the accused beyond a reasonable doubt. From time to time there has been controversy as to whether it is proper for a trial judge to attempt to instruct the jury as to the meaning of reasonable doubt. The term, as used in criminal law, may be defined broadly in the language of Chief Justice Shaw in *Commonwealth v. Webster,* 5 Cush (Mass.) 295, 320, 52 Am. Dec. 711, 731, as "that state of the case, which, after the entire

comparison and consideration of all the evidence, leaves the minds of jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge." In more recent years some of the courts have expressed the opinion that the English language is not adequate to give a specific definition of "reasonable doubt" that would simplify its meaning, for the rule requiring that the jury must be satisfied beyond a reasonable doubt is generally as simple and intelligible as a guide for the jury as any rule that could be formulated. In fact, it is recognized that the rule is quite frequently made obscure by attempts at definition, which serve to create doubts instead of removing them. This danger of confusing the minds of the jurors in attempting to define "reasonable doubt" has prompted some of the trial judges to refuse to attempt to give any definition. Of course, a definition is not reversible error unless, by reason of peculiar circumstances or phraseology, such an instruction misleads or confuses the jury. *State v. Craft,* 131 W. Va. 195, 47 S. E. 2d 681, 687. Nevertheless, it has been the general practice of the overwhelming majority of the courts of this country to offer the jury some explanation of the term.

The distinction between "definition" and "explanation" of reasonable doubt was made by the United States Supreme Court in *Hopt v. Utah,* 120 U. S. 430, 7 S. Ct. 614, 619, 30 L. Ed. 708. In that case, wherein the defendant was convicted of murder, the trial judge instructed the jury that if, after consideration of all the evidence, they can truthfully say that they have an abiding conviction of the defendant's guilt, such as they would be willing to act upon in the more weighty and important matters relating to their own affairs, then they have no reasonable doubt. In giving the Court's approval to this explanation, Justice Field said: "But an illustration like the one given in this case, by reference to the conviction upon which the jurors would act in the weighty and important concerns of life, would be likely to aid them to a right conclusion, when an attempted definition might

fail. If the evidence produced be of such a convincing character that they would unhesitatingly be governed by it in such weighty and important matters, they may be said to have no reasonable doubt respecting the guilt or innocence of the accused, notwithstanding the uncertainty that attends all human evidence."

Similarly in *Holt v. United States,* 218 U. S. 245, 31 S. Ct. 2, 54 L. Ed. 1021, 20 Ann. Cas. 1138, the trial judge instructed the jury that the jurors in the performance of their jury service should decide controversies as they would any important question in their own affairs. The Supreme Court held that the instruction was correct. In *Wilson v. United States,* 232 U. S. 563, 34 S. Ct. 347, 349, 58 L. Ed. 728, the trial judge instructed the jury: "If you are in the frame of mind where, if it was a matter of importance to you in your own affairs, away from here, you would pause and hesitate before acting, then you have a reasonable doubt." Again the Court held the instruction sufficiently favorable to the accused.

Defendant relied heavily on *Paddock v. United States,* 9 Cir., 79 F. 2d 872, where the Court disapproved of an instruction that reasonable doubt in a criminal trial is comparable to the doubt which a juror might have as to whether the price offered to him for a piece of property is as much as he could expect to get for it. In that case, however, the Court made a distinction between the instruction before it and the usual instructions describing reasonable doubt in a criminal trial as being comparable to the doubt which would cause a person to hesitate in acting upon the "highly important" affairs of life.

In accordance with the rule followed by the Federal courts and by the great majority of the State courts in America, we hold that, after the judge in a criminal trial instructs the jury that the State must prove the charge beyond a reasonable doubt in order to convict, it is not erroneous to instruct the jury that evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent man of the truth of a

proposition with such force that he would act upon that conviction without hesitation in his own most important affairs. *People v. Hughes,* 137 N. Y. 29, 32 N. E. 1105, 1108; *Commonwealth v. Webb,* 252 Pa. 187, 97 A. 180; *Commonwealth v. Kluska,* 333 Pa. 65, 3 A. 2d 398, 403; *State v. Pitt,* 166 N. C. 268, 80 S. E. 1060, Ann. Cas. 1916C, 422; *People v. Davis,* 171 Mich. 241, 137 N. W. 61, 64; *Bartlow v. State,* 183 Ind. 398, 109 N. E. 201; *Wacaser v. People,* 134 Ill. 438, 25 N. E. 564, 23 Am. St. Rep. 683; *State v. Krampe,* 161 Iowa 48, 140 N. W. 898; *Martin v. State,* 67 Neb. 36, 93 N. W. 161; *State v. Gibbs,* 10 Mont. 213, 23 P. 289, 10 L. R. A. 749; *State v. Clancy,* 20 Mont. 498, 52 P. 267; *State v. Neel,* 23 Utah 541, 65 P. 494; *State v. Carter,* 66 Ariz. 12, 182 P. 2d 90, 93; *State v. Crockett,* 39 Or. 76, 65 P. 447; *State v. Harras,* 25 Wash. 416, 65 P. 774.

We do not feel that the instruction to the jury in the case at bar was prejudicial. However, on account of reversible error in the admission of evidence, we must reverse the judgment of conviction and award a new trial.

*Judgment reversed and case remanded for a new trial.*