# HERBERT BENJAMIN MONTGOMERY *v.* STATE OF MARYLAND

[No. 35, September Term, 1980.]

*Decided December 4, 1981.*

The cause was argued before SMITH, DIGGES, ELDRIDGE, COLE, DAVIDSON and RODOWSKY, JJ.

*Louis P. Willemin, Assistant Public Defender,* with whom were *Alan H. Murrell, Public Defender,* and *Martha Weisheit, Assistant Public Defender,* on the brief, for appellant.

*Stephen B. Caplis, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

COLE, J., delivered the opinion of the Court. ELDRIDGE and DAVIDSON, JJ., concur in the result. ELDRIDGE, J., filed a concurring opinion at page 96 *infra,* in which DAVIDSON, J., concurs.

We are asked to decide two issues in this case: (1) whether the trial judge erred in instructing the jury that his instructions were advisory and that they could pay absolutely no attention to what he told them about the law; (2) whether the trial judge erred in refusing to define the concept of reasonable doubt to the jury.

For the purposes of our decision it is only necessary to relate the basic facts. A group of men hailed a taxicab. One of them walked up to the taxicab, looked in, and then walked over to another man who approached the taxicab, stuck a gun through the window at the driver and said, "Let me have it." The driver sped away, hearing a shot as he left the scene. The driver made a photographic and in-court identification of Herbert Benjamin Montgomery as the man who had first approached the taxicab.

Montgomery was tried by a jury in the Circuit Court for Prince George's County and found guilty of assault with intent to rob and the use of a handgun in the commission of a felony. He was sentenced to two concurrent five year terms of imprisonment. The Court of Special Appeals affirmed the convictions in an unreported *per curiam* opinion, *Montgomery v. State,* No. 853, September Term, 1979, filed April 7, 1980. We granted certiorari to consider whether the trial judge committed reversible error in two of his instructions which we shall discuss separately.

## I

Montgomery claims the first error occurred when the trial judge instructed the jury as follows:

> In our State, unlike most of the other states in our country, in a criminal case you as a jury sit not only as what we call the triers of the facts, but you will also sit as the judges of the law. And what this means, in essence, is simply this: The facts will be as you find them to be in this case, and the law will be as you find it to be in this case. And because you serve in that function, anything that I now tell you about the facts and anything that I will now tell you about the law will be, accordingly, advisory. And because it is advisory, you may pay absolutely no attention to what I tell you about the facts, *and you may pay absolutely no attention to what I tell you about the law* with one admonition concerning the law, and that is, you are not to apply the law as you think it ought to be, in this case, or what it should be, but what it, in fact, is in this particular case. And because you are the judges of the law, the attorneys, Mr. Shockley and Mr. Feisner, may tell you in their closing arguments what they think the law is and how you should apply it in this case. I, therefore, instruct you in an advisory capacity that in any criminal case that you will sit on that the law places the burden on the proof of — the law places

the burden on the State of Maryland to prove that a defendant is guilty beyond what we call a reasonable doubt. [Emphasis supplied].

Montgomery contends that when the trial judge instructed the jury that they could pay absolutely no attention to the instructions on the law he misstated the law. He maintains that even though Article 23 of the Md. Declaration of Rights provides that in "the trial of all criminal cases, the jury shall be Judges of law, as well as of fact" this does not mean that the jury may ignore everything the judge tells them. The State counters by contending that the judge's instruction must be viewed as a whole and when so examined it is clear that the "pay no attention" language referred to the application of existing law. The only qualification upon this application, the State contends, was that the lawyers would be allowed to present their interpretation of the law in their respective arguments. Montgomery retorts that instructing the jury that they are not bound by any of the judge's instructions on the law does not comport with Article 23 and he further argues that if this is a correct application of Article 23 then such application in this case is unconstitutional.

This Court recently upheld the constitutionality of Article 23 in *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980). Judge Digges in explaining how this provision would be applied first noted that

the jury was not granted, by Article 23 the power to decide all matters that may be correctly included under the generic label — "law." Rather, its authority is limited to deciding "the law of the crime," *Wheeler v. The State,* 42 Md. 563, 570 (1875), or "the definition of the crime," as well as "the legal effect of the evidence before [the jury]." *Beard v. State,* 71 Md. 275, 280, 17 A. 1044, 1045, (1889) . . . . [And] it [is] quite evident that the jury's role in judging the law under Article 23 is confined *"to resolv[ing] conflicting interpretations of the law [of the crime]* and to decid[ing] whether th[at] law should be

applied in dubious factual situations," *and nothing more. Dillon v. State,* 277 Md. 571, 581, 357 A.2d 360, 367 (1976) (emphasis in original) [289 Md. at 178-79].

He further explained that

[b]ecause of this division of the law-judging function between judge and jury, it is incumbent upon a trial judge to carefully delineate for the jury the following dichotomy: (i) that the jury, under Article 23, is the final arbiter of disputes as to the substantive "law of the crime," as well as the "legal effect of the evidence," and that any comments by the judge concerning these matters are advisory only; and (ii) that, by virtue of this same constitutional provision, all other aspects of law (*e.g.,* the burden of proof, the requirement of unanimity, the validity of a statute) are beyond the jury's pale, and that the judge's comments on these matters are binding upon that body. In other words, the jury should not be informed that all of the court's instructions are merely advisory; rather only that portion of the charge addressed to the former areas of "law" may be regarded as non-binding by it, and it is only these aspects of the "law" which counsel may dispute in their respective arguments to the jury. On the other hand, the jury should be informed that the judge's charge with regard to any other legal matter is binding and may not be disregarded by it. [289 Md. at 179-80 (footnote omitted)].[1]

As we see it, then, an instruction on the law of the crime must contain a definition or explanation of the offense

---

1. In Stevenson the Court analyzed and approved prior decisions which indicated that it is not within the province of the jury to say whether a statute has been repealed, has operative effect, or is unconstitutional. Our cases also indicated that juries are not permitted to hear or determine preliminary questions like the court's jurisdiction, the admissibility of evidence, or the competency of witnesses.

charged in language setting forth the essential elements thereof, along with such additional explanation of the law pertaining to the criminal agency of the accused as may be necessary. Furthermore, we wish to make clear that, under Article 23 of the Md. Declaration of Rights, the application of Md. Rule 757 b, which provides, in part, that

> [i]n every case in which instructions are given to the jury the court shall instruct the jury that they are the judges of the law and that the court's instructions are advisory only

is limited to those instances when the jury is the final arbiter of the law of the crime. Such instances arise when an instruction culminates in a dispute as to the proper interpretation of the law of the crime for which there is a *sound basis*. Under such circumstances, counsel are granted leave to argue contrary to the court's instruction on the law of the crime and this is the occasion when Article 23 and Rule 757 b require the court's instruction to be advisory. Even here, counsel may not in their arguments attempt to persuade the jury to enact new law or repeal or ignore existing law. However, in those circumstances where there is no dispute nor a sound basis for a dispute as to the law of the crime, the court's instructions are binding on the jury and counsel as well.

In this case the trial judge's instructions explaining the elements of the crime of assault with intent to rob and use of a handgun in the commission of a felony were essentially correct. In addition, because the facts indicated that Montgomery was not the gunman, it was not inappropriate for the judge to explain the difference between a principal in the first and second degree, so that the jury could determine if Montgomery and the gunman were working in concert to rob the taxidriver. However, since there was no dispute between the State and Montgomery as to the law of the crime, the trial judge's instruction thereon was binding and counsel should not have been allowed to argue to the contrary. Thus, it was error to instruct the jury that his instructions were

advisory and that the jury could pay absolutely no attention to his instructions.

Moreover, this error was compounded when the trial judge punctuated his charge with the admonition that *all* of his instructions were advisory. For example:

> And I instruct you in an advisory capacity that in regards to these statements, that the statements were admitted not for the proof or the substance of the statements, but merely to impeach or discredit the testimony of Mr. Montgomery. And you will accordingly accept them for that purpose at this time.

> \* \* \*

> I, therefore, instruct you in an advisory capacity that in any criminal case you will sit on that. . . the law places the burden on the State of Maryland to prove that a defendant is guilty beyond what we call a reasonable doubt.
>
> The law does not require any defendant in a criminal case to prove that he is innocent. Accordingly, you will assume in this case that Mr. Montgomery is innocent unless you are convinced from all the evidence that you have heard in this case that he is guilty.

> \* \* \*

> I further instruct you in an advisory capacity that anything that these gentlemen told you when this case started, anything that they will tell you after I have concluded my instructions in this case, my advisory instructions, is not evidence. The only evidence you are to consider when you go into that jury room to deliberate is the evidence that you heard that came from that witness stand, any stipulations that these gentlemen may have made between

them, and any exhibits that I may have admitted into evidence.

There are certain bedrock characteristics which distinguish our system from most others throughout the world and which are indispensable to the integrity of every criminal trial, to wit:

(1) The accused is presumed innocent until proved guilty by the State by evidence beyond a reasonable doubt.

(2) The State has the burden to produce evidence of each element of the crime establishing the defendant's guilt.

(3) The defendant does not have to testify and the jury may infer no guilt because of his silence.

(4) The evidence to impeach the defendant bears only on his credibility and may not be used to prove the substance of the offense.

(5) The evidence is limited to the testimony (and reasonable inferences therefrom) and the exhibits admitted into evidence.

(6) Evidence does not include the remarks of the trial judge nor the arguments of counsel.

Instructions on these matters are not "the law of the crime;" they are not advisory; and they cannot be the subject of debate by counsel before the jury. They are binding. They are the guidelines of due process to which every jury is required to adhere. It was error for the trial judge to tell the jury they could pay no attention to instructions on the law which did not pertain to the elements of the crime but which were standard instructions invoked to preserve the integrity of the judicial system and to assure the defendant a fair and impartial trial. We conclude, therefore, that in the instant case the trial judge muddled the judge/jury dichotomy and erred in instructing the jury as to its role as trier of the law and the facts.

## II

The second instruction Montgomery contends was erroneous was the trial court's explanation of the reasonable doubt standard of proof. At the conclusion of the evidence and before oral arguments the judge told the jury that:

> The standard for the criterion by which you are to judge Mr. Montgomery's guilt or innocence is that you must be convinced beyond a reasonable doubt that he is guilty. And the three of you that have sat on prior criminal cases, and those of you that will sit on future criminal cases, will undoubtedly appear before other judges who in their judgment will give you an example of what he or she thinks constitutes a reasonable doubt. I don't give any examples, because I don't know what would constitute a reasonable doubt in your respective minds. You 12 people represent a broad cross section of our county, and you come from different backgrounds and all with different experiences. And in making that determination as to whether or not you have a reasonable doubt as to whether or not Mr. Montgomery is guilty, you will draw on your own backgrounds and your own experiences to make that determination.
>
> When we use the term reasonable doubt, we do not mean beyond all possible doubt. A reasonable doubt is nothing more than what it says it is, it is the doubt which is founded upon reason. And we think that you ladies and gentlemen are reasonable ladies and gentlemen, and you will make that determination as to whether or not such a doubt exists in your mind.

Montgomery made a timely objection to this instruction on the grounds that it was an inadequate explanation and was couched in subjective terminology.

The reasonable doubt standard of proof is an essential element of the criminal trial process and the accused has a

constitutional right to require the State to meet this burden of proof. *In Re Winship,* 397 U.S. 358, 361-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). Its inclusion in the court's charge is so indispensable that the Supreme Court has indicated that failure to instruct the jury of the requirement of the reasonable doubt standard is never harmless error. *Jackson v. Virginia,* 443 U.S. 307, 320, n. 14, 99 S. Ct. 2781, 61 L. Ed. 2d 560 *reh. denied,* 444 U.S. 890, 100 S. Ct. 195, 62 L. Ed. 2d 126 (1979). Hence, any allegation of the failure to properly instruct on the standard of reasonable doubt must be closely scrutinized.

In consonance with the Supreme Court edicts on the subject, this Court has provided an added protection by requiring an instruction explaining reasonable doubt to the jury if the accused requests it. Maryland Rule 757(b) provides:

> The court may, and at the request of any party shall, give those advisory instructions to the jury as correctly state the applicable law. The court may give its instructions orally or, with the consent of the parties, in writing. The court need not grant any requested instruction if the matter is fairly covered by the instructions actually given. In every case in which instructions are given to the jury the court shall instruct the jury that they are the judges of the law and that the court's instructions are advisory only.

Recently, this court has held that under Md. Rule 757b, "a trial judge in a criminal case, must give an instruction correctly explaining 'reasonable doubt' if requested by the accused." *Lansdowne v. State,* 287 Md. 232, 243, 412 A.2d 88, 93 (1980) (footnote omitted). In that case, the accused requested the trial judge to explain reasonable doubt to the jury by repeating the explanation given earlier in the judge's preliminary remarks. The judge refused to repeat the explanation and instead told the jury to recall his earlier remarks and convert them into an instruction. This Court decided that preliminary remarks do not ordinarily serve

the same function as jury instructions and therefore cannot be considered jury instructions under Md. Rule 757b. Judge Davidson, speaking for the Court, said that an instruction on reasonable doubt was found to be particularly important because "the term 'reasonable doubt' is not so commonplace, simple, and clear that its meaning is self-evident to the jury." 287 Md. at 242, 412 A.2d at 93. The Court stated that even judges have problems construing the term reasonable doubt and that laymen are at least as likely to misconstrue the term. As a result, a correct explanation of the term should be given to the jury, especially when it is requested by the accused.

Prior to *Lansdowne* we discussed the problem besetting the trial judges in their effort to comply with the accused's request for an instruction on reasonable doubt in *Lambert v. State,* 193 Md. 551, 69 A.2d 461 (1949). We there acknowledged that attempts to define the term often make its meaning obscure and confuse the jury and that "[t]his danger of confusing the minds of the jurors . . . has prompted some of the trial judges to refuse to attempt to give any definition." 193 Md. at 559. Obviously, this was the concern of the trial judge in the instant case. "Nevertheless," we said in *Lambert,* "it has been the general practice of the overwhelming majority of the courts of this country to offer the jury some explanation of the term." *Id.*

The instruction at issue in *Lambert* explaining reasonable doubt was as follows:

> That doesn't mean, however, that the State must prove those elements of a crime to an absolute or mathematical certainty. It means such evidence as you would act upon in a matter involving important affairs in your life or your business or with regard to your property. If the evidence is sufficient that you would act upon it in a very important matter in your own lives, then it is sufficient to convict in a criminal case. [193 Md. at 558].

The *Lambert* Court found that this instruction was not prejudicial but went on to hold that

it is not erroneous to instruct the jury that evidence is sufficient to remove a reasonable doubt when it convinces the judgment of an ordinarily prudent man of the truth of a proposition with such force that he would act upon that conviction without hesitation in his own most important affairs. [193 Md. at 560-61].

We reaffirm *Lambert* as to the sufficiency of the above instruction. However, we hasten to add that this is not the only satisfactory explanation of reasonable doubt and we decline to prescribe an instruction that will apply in every case. Suffice it to say, that in our opinion instructing a jury that reasonable doubt is a doubt which is founded upon reason without focusing their attention on the grave importance of their decision based on the evidence and their commitment to be bound by the result is a circular attempt at explanation which does nothing more than define the term by using the term.

We conclude, therefore, that the trial judge's instruction explaining reasonable doubt in the instant case was insufficient to comply with the holding of *Lansdowne,* that the judge is required to provide an instruction correctly explaining reasonable doubt when requested by the accused.

Finally, Montgomery objects to the instruction of the trial judge because he contends it was subjective. We find no merit in this contention. To us whether subjective or objective there is no significant difference if the instruction given impresses upon the jury the test it must apply in weighing the evidence to determine the defendant's guilt.

For the above reasons, we reverse the judgment of the Court of Special Appeals.

> *Judgment of Court of Special Appeals reversed; case remanded to that court with instructions to reverse the judgment of the Circuit Court for Prince George's County and remand to that court for a new trial.*
> *Costs to be paid by the county.*

*Eldridge, J., concurring:*

I fully agree with the judgment in this case and with Part II of the Court's opinion. However, with respect to Part I of the Court's opinion, I continue to adhere to the views expressed in my dissenting opinion in *Stevenson v. State,* 289 Md. 167, 189-204, 423 A.2d 558, 570-577 (1980).

Specifically, I believe that Article 23 of the Maryland Declaration of Rights, and those portions of Maryland Rule 757 b and g implementing Article 23, violate the Fourteenth and Sixth Amendments to the United States Constitution. *See* 289 Md. at 191-194. Article 23, by authorizing a criminal jury in certain limited circumstances to disregard legally correct instructions, and find the law to be otherwise than it is, abridges a defendant's right to be tried in accordance with the law of the jurisdiction and thus violates the Due Process Clause of the Fourteenth Amendment. Moreover, Article 23 is inconsistent with the proper role of a criminal jury under the jury trial clause of the Sixth Amendment, applicable to state proceedings by virtue of the Fourteenth Amendment. *See Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), and *Sparf v. United States,* 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895). Consequently, in my opinion, under *no* circumstances should a jury in a criminal case be told that it is the judge of the law.

Judge Davidson has authorized me to state that she concurs with the views expressed herein.