478 A.2d 321

Fred W. ALLNUTT, Sr.

v.

STATE of Maryland.

No. 1588 Sept. Term, 1983.

Court of Special Appeals of Maryland.

July 17, 1984.

James L. Mayer, Columbia, with whom were Mayer & Williams, P.A., Columbia, on the brief, for appellant.

Carmina Hughes, Asst. Atty. Gen., with whom were Stephen H. Sachs, Atty. Gen., of Maryland, Richard B. Rosenblatt, Asst. Atty. Gen., William R. Hymes, State's Atty., for Howard County and Charles Burton Frey, Asst. State's Atty., for Howard County on the brief, for appellee.

Argued before GILBERT, C.J., and GETTY and BELL, JJ.

GILBERT, Chief Judge.

The State believes that it has the right to require that taxes be paid in the generally accepted United States currency—Federal Reserve Notes. Fred W. Allnutt, Sr., a Maryland resident, thinks the State may not collect taxes except in gold or silver specie. Allnutt reasons that since that form of currency does not exist, taxes, while due, cannot be constitutionally paid.

A twelve person jury in the Circuit Court for Howard County obviously accepted the State's view, because they convicted Allnutt of nine counts of wilfully failing to file retail sales tax returns as well as wilfully failing to pay sales tax. Additionally, Allnutt was convicted of wilfully failing to file a 1981 State income tax return.

Judge Guy J. Cicone sentenced Allnutt to one and one-half years imprisonment, and also imposed a fine. The prison term was suspended and Allnutt was placed on

probation for a period of five years, but only the first year of the probation is to be supervised.

In this Court Allnutt asserts:

1) the trial judge erred in refusing to give the jury a requested instruction;

2) the trial judge erred in instructing the jury that it was only to judge the facts of the case; and

3) there was not sufficient evidence with which to convict Allnutt of wilful failure to file tax returns and pay sales taxes.

Allnutt is a successful excavating contractor who admitted he did not file a 1981 income tax return, despite a gross income in excess of $400,000.00 for that year. Additionally, Allnutt acknowledges that he neither filed sales tax returns nor did he pay the sales tax that was due the State. In defense of those delinquencies, he contends that the Constitution of the United States precludes the State from collecting payment of taxes other than in gold or silver specie.

Allnutt reads and interprets Article 1, § 10 of the Federal Constitution as prohibiting the State from collecting monies in other than the "coin of the realm," i.e., gold or silver.[1] He seems to imply that if the Congress authorizes gold and silver as specie, he would have no trouble paying taxes. As matters now stand, he cannot so pay because he believes Federal Reserve Notes are not redeemable legal currency.

Provocation for Allnutt's eventual challenge to the Maryland tax statute is attributed to an incident Allnutt had with the Retail Sales Tax Division of the State Comptroller's Office.[2] In response to whatever occurred, Allnutt undertook a researching task that led him to think that the State of Maryland had no legal right to demand tax payments in

---

**1.** Article 1, § 10 of the Federal Constitution states, in pertinent part: "No State shall ... make any Thing but gold and silver Coin a Tender in Payment of Debts ...."

**2.** The record reflects the existence of the incident but fails to state its nature or essence.

dollars. He wrote to the Maryland Attorney General and to the Retail Sales Tax Division for clarification. His letters said, in part:

"One, is Article 1, § 10 [of the U.S. Constitution] still binding on the State of Maryland? Two, if Article 1, § 10 is still binding can each citizen be enforced to pay his or her debts in present Federal Reserve Notes if they are objected to? Three, am I correct in my understanding that gold and silver are declared as the money of account, of the United States, that Maryland must conform to, that Title 31, § 371 of the United States Code?"

Allnutt's letters went unanswered. He misinterpreted the non response as acquiescence in his belief that he did not have to pay taxes. Allnutt testified:

"[M]y studies ... led me to believe that the gold and silver monetary system was the only lawful monetary system for which to pay taxes. I have studied ... the meaning of a dollar and the meaning of a dollar sign. In reviewing these forms they did not say on there to compute the tax in Federal Reserve Notes or obligations of the United States. They said to compute it in dollars. I was confused as to, in how to do that."

The jury, as we have seen, was not confused; it found Allnutt guilty of all ten charges.

## I.

Allnutt contends that it was error for Judge Cicone to refuse to instruct the jury regarding the miscellaneous federal statutes and constitutional provisions which led to Allnutt's "confusion." [3] Those instructions, as the State elucidates, would have required the jury to determine, in

---

**3.** Specifically, Allnutt requested instructions as to the requirements of Article 1, § 10 of the U.S. Constitution as well as the following federal statutes: 31 U.S.C. § 311, 31 U.S.C. § 371, 31 U.S.C. § 405a–3, 31 U.S.C. § 408a, 12 U.S.C. § 411, 31 U.S.C. § 742. In addition, Allnutt asked that the jury be instructed with respect to Md.Ann.Code art. 81, §§ 280(c)(1), 294(a)(2), 294(a)(3), 317, and 342.

light of the "confusing" federal law, whether Allnutt's actions were "wilful." Instead of giving the requested instruction, Judge Cicone told the jury:

> "Since each act is required to be willful I ... advise you that the defendant's conduct is not willful if he acted through negligence, inadvertence or mistake, or due to his good faith, or misunderstanding of the requirements of the law. It should be pointed out, however, that a defendant's disagreement with the law, no matter how earnestly held, does not constitute a defense of good faith, misunderstanding, or mistake. It is the duty of all citizens to obey the law, whether they agree with it or not. One of the elements of the crimes charged ... is willful failure to file a return or pay a tax. *Willfulness may be established through proof, that* Mr. Allnutt's *failure ... constituted a voluntary intentional violation* of a known legal duty. In other words, the State must prove that Mr. Allnutt must have known clearly and without a doubt, that he had a legal duty which was clearly stated to him, to file the return demanded by the State or pay the tax in order for the element of willfulness to be proven by the State. Before willfulness can be found, a clear legal duty must first be found." (Emphasis supplied.)

The emphasized portion of the instruction is a mirror image of the language used by Chief Judge Murphy for the Court of Appeals in *Johnson v. State*, 294 Md. 515, 451 A.2d 330 (1982), to define "wilful" as used in the State income tax law.[4] He wrote that, "wilfulness may be established through proof that the accused's failure to file constituted a voluntary intentional violation of a known legal duty, not the result of accident or mistake or other innocent cause." 294 Md. at 518–19, 451 A.2d 330.

---

**4.** Chief Judge Murphy was referring specifically to Md.Ann.Code art. 81, § 320.

Judge Cicone's instructions to the jury adequately embraced established law and carefully tracked *Johnson, supra.* There was no error.

## II.

Allnutt further faults the trial judge's instruction to the jury that, "In the present case, the law which is to be applied, is clear and thus you should only act as judge of the facts."

In furtherance of his argument with regard to the jury's being the judge of the law and fact, Allnutt realleges his assertions that Federal Reserve Notes are not legal tender and, therefore, his obligations under the law were unclear. We observe that the Eighth Circuit has twice declared Federal Reserve Notes to be taxable dollars. *United States v. Rifen,* 577 F.2d 1111 (8th Cir.1978) and *United States v. Daly,* 481 F.2d 28 (8th Cir.1973), *cert. denied,* 414 U.S. 1064, 94 S.Ct. 571, 38 L.Ed.2d 469 (1973). We share the Eighth Circuit's view.

■ It is apparent to us that Allnutt misreads Article 1, § 10 of the U.S. Constitution. The section prohibits the States from declaring legal tender to be anything other than gold or silver, but that constitutional barrier does not extend to the Congress. It is free to declare what constitutes legal tender for the payment of taxes and other debts. *Juilliard v. Greenman* [Legal Tender Case], 110 U.S. 421, 446, 4 S.Ct. 122, 128, 28 L.Ed. 204 (1884); *Veazie Bank v. Fenno,* 75 U.S. 533, 548 (8 Wall. 533), 19 L.Ed. 482 (1869).

The Congress, through 31 U.S.C. § 392, has specifically said that Federal Reserve Notes "shall be legal tender for all debts, public and private, public charges, taxes, duties and dues." *See Solyom v. Md.-Nat'l Cap. P. & P. Comm'n,* 53 Md.App. 280, 284, 452 A.2d 1283 (1982); *United States v. Rifen, supra; Chermack v. Bjornson,* 302 Minn. 213, 223 N.W.2d 659, 661 (1974), *cert. denied,* 421 U.S. 915, 95 S.Ct. 1573, 43 L.Ed.2d 780 (1975).

Allnutt's attack upon the federal law is at best a red herring dragged across the trail to throw off the hounds in pursuit of the fox.

Having determined that Allnutt's duty to pay taxes in Federal Reserve Notes was clear, we return whence we started our discussion on this issue, namely, the jury's being the judge of fact, not of the law.

Maryland is one of the two States [5] in the nation which provides, constitutionally, that juries in criminal cases are judges of the law as well as of the fact. Article 23 of the Declaration of Rights to the Maryland Constitution provides, in pertinent part:

> *"In the trial of all criminal cases, the Jury shall be the Judges of Law, as well as of fact,* except that the Court may pass upon the sufficiency of the evidence to sustain a conviction." (Emphasis supplied.)

The predecessor of the italicized portion of that particular fiat was first incorporated in the Maryland Constitution of 1851. The clause pertaining to sufficiency of the evidence was not added until one hundred years later when Laws 1949, ch. 407 was ratified by the electorate on November 7, 1950.

Until *Stevenson v. State,* 289 Md. 167, 179, 423 A.2d 558, was decided on December 17, 1980, it was generally believed by bench and bar that a judge's comments as to the law in a criminal case were advisory and not binding on the jury. A jury—twelve lay persons—was to determine not only the evidence but the law of the case. The jury was not free, however, to disregard existing law or to enact new law, nor was it permitted to decide helter skelter what the law should be rather than what it was. *Hamilton v. State,* 12 Md.App. 91, 277 A.2d 460 (1971), *aff'd* 265 Md. 256, 288 A.2d 885, *cert. denied,* 409 U.S. 1006, 93 S.Ct. 445, 34 L.Ed.2d 298 (1972). Notwithstanding the jury's being

---

**5.** Indiana is the other State. Constitution of the State of Indiana, Article 1, § 19.

judges of the law, it was not permitted to pass upon the constitutionality of a statute. *Giles v. State,* 229 Md. 370, 183 A.2d 359 (1962); *Franklin v. State,* 12 Md. 236 (1858). More often than not, we surmise, the jury followed the judge's advisory instruction because the jurors, as lay persons, would not usually be familiar with the intricacies of law. *Stevenson* temporarily muddied the waters; what had been clear became murky. *Stevenson* told us that a jury's judicial role was limited to the "law of the crime" and "that all other legal issues are for the judges alone to decide." *Stevenson v. State,* 289 Md. at 166, 423 A.2d 558. Confusion then arose as to what was meant by the term "law of the crime."

One year later the Court in *Montgomery v. State,* 292 Md. 84, 437 A.2d 654 (1981), sought to still the roiling waters by explicating *Stevenson.* The message of *Montgomery* is that Article 23 of the Maryland Declaration of Rights and Md.Rule 757 b,[6] which provides much the same thing, are "limited to those instances when the jury is the final arbiter of the law of the crime"; that is to say where there is a dispute as to the state of the law. "[W]here there is no dispute nor a sound basis for a dispute as to the law of the crime, the court's instructions are binding on the jury and counsel as well." *Montgomery v. State,* 292 Md. at 89, 437 A.2d 654.

A distillation of *Stevenson* and *Montgomery* leads us to conclude that it will be a rare case indeed where there is "a dispute or sound basis for a dispute" as to the "law of the crime." We envision that such a dispute could arise when an accused is charged with an attempt to commit a crime,

---

6. Md.Rule 757 b provides:
   "The court may, and at the request of any party shall, give those advisory instructions to the jury as correctly state the applicable law. The court may give its instructions orally or, with the consent of the parties, in writing. The court need not grant any requested instruction if the matter is fairly covered by the instructions actually given. In every case in which instructions are given to the jury the court shall instruct the jury that they are the judges of the law and that the court's instructions are advisory only."

yet the evidence shows the crime was completed. The jury might then be called upon to decide the law of the crime. Does the completion of the crime include the attempt to commit it? Is the accused too guilty to be guilty as charged?

■ Instances of dispute of the law of the crime are an endangered species rapidly approaching extinction. Once an appellate court has ruled on the "law of the crime," the matter then becomes settled law, and thereafter the jury is no longer the judge of the law with respect to that particular matter. Consequently, disputes of the law of the crime will decrease in number with each successive appellate ruling.

In the instant case, Judge Cicone, as we initially noted, instructed the jury that, "the law which is to be applied is clear and ... you should only act as judge of the facts." He went on to state:

> "[U]nder the Constitution of the State of Maryland the jury in a criminal case is the judge of the law as well as the facts. However, this does not mean that you are to arbitrarily interpret the law as to make it conform to what you feel the law should be or what you would like it to be. Nor does it mean that the jury is to make new law or ignore clearly existing laws. What it does mean is that the jury is to act as judge of the law if the law which should be applied, is uncertain or there is a dispute as to preexisting law."

■ The instruction does more than satisfy *Stevenson v. State, supra,* and *Montgomery v. State, supra.* Indeed, in light of *Montgomery,* the instruction given by Judge Cicone seems to confer more upon Allnutt than he is entitled to receive.

■ We think it the better practice for judges to avoid instructing a jury that it is the judge of the law, unless

there is an actual dispute or sound basis for a dispute as to the law of the crime. Ordinarily, there is no need for a judge to comment to the jury upon the language of Article 23 of the Maryland Declaration of Rights or of the provisions of Md.Rule 757 b.

## III.

The appellant's final grasp at victory falls short. He asseverates that the evidence was insufficient to sustain his conviction because the State did not show that his failure to pay taxes or file returns was wilful. Almost, as if viewing an instant replay, we are again compelled to revisit Allnutt's sortie on the federal laws. Because he relied on those federal laws, Allnutt avers that he acted in good faith and, therefore, cannot be convicted of wilfully failing to comply with the Maryland income tax and retail sales tax acts. Neither the State, Judge Cicone, the jury nor we share that view.

The evidence was crystalline that Allnutt voluntarily and intentionally failed, neglected or refused to perform a legal duty, namely, file a 1981 income tax return and pay the tax. He further voluntarily and intentionally failed, neglected or refused to file sales tax reports or to pay the sums due the State.

The element of wilfulness does not require proof of any particular motive other than an intentional and voluntary violation of a legal duty. *Johnson v. State, supra; United States v. Rifen, supra.* Evidence that Allnutt in prior years paid Maryland income taxes, as well as retail sales taxes, is sufficient to demonstrate that his failure to file returns in 1981 was purposeful, deliberate, voluntary and intentional.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.