499 A.2d 484

**John Joseph SIBIGA, Sr.**

v.

**STATE of Maryland.**

**No. 84, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Nov. 7, 1985.

Michael R. Malloy, Asst. Public Defender (Alan H. Murrell, Public Defender, on brief), Baltimore, for appellant.

Valerie W. Loftin, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Sandra A. O'Connor, State's Atty. for Baltimore County and Howard B. Merker, Deputy State's Atty., for Baltimore County, on brief), Towson, for appellee.

Submitted before BISHOP, ROSALYN B. BELL and ROBERT M. BELL, JJ.

ROBERT M. BELL, Judge.

John Joseph Sibiga, appellant, was found guilty by a jury in the Circuit Court for Baltimore County of hindering a police officer in the performance of his duty and contributing to the delinquency of a minor. He was sentenced to two concurrent one year sentences. On appeal, he attacks his convictions on four bases:

I. The lower court erred by refusing to instruct the jury that they were the judges of the law and were not bound by the court's instructions on the law.

II. The lower court erred by allowing the prosecutor, in his closing argument to the jury, to compare appellant to Al Capone.

III. The lower court erred by denying appellant's motion for judgments of acquittal because the evidence was insufficient.

IV. The lower court erred by denying appellant's motion for acquittal on the charge of contributing to the delinquency of a minor.

On the morning of September 1, 1983, law enforcement officers of the Baltimore County Police and Sheriff's Departments went to appellant's home to execute a writ of possession which had been issued by the Circuit Court for Baltimore County and which authorized appellant's eviction. After some delay, appellant responded to the officers' knocking and, at their request, opened the door. The writ of possession was shown to him and the purpose of the officers' presence explained. When appellant attempted to close the door a struggle between appellant and the officers ensued. As a result, appellant having been removed from the house was pinned on the ground and subdued. During the struggle, appellant yelled to his 11 year old son, Patrick, "go get it".[1] When officers approached the house, they found Patrick, standing in the living room pointing a shotgun at them demanding that his father be left alone. When their attempts to convince the boy to put the gun down failed, they requested appellant to tell his son to put the gun down. He refused, stating "he knows what he's doing." Other attempts to get appellant to cooperate, includ-

---

1. Inconsistently, Chief Deputy Weirs also testified that he did not know the boy's name when he saw him with the shotgun.

ing a request that he tell them his son's name, failed.[2] Subsequently, the gun was put down and appellant was arrested. His son was detained by the juvenile authorities.

On August 18, 1983, in the Circuit Court for Baltimore County in a civil action[3] to foreclose the mortgage on appellant's home, the mortgagee's petition for issuance of a writ of possession was granted.[4] At his criminal trial, appellant testified that following the court's oral decision, he advised the court of his intention to appeal and, on the next day, ordered the transcript from the court reporter. According to appellant, he also gave the court reporter a written notice of appeal and paid $50.00, for both of which he received a receipt. He was not told about the need to file a supersedeas bond.[5]

Upon his release from custody on September 1, 1983, appellant testified that, his motion to stay the writ of possession in the civil action was granted. Also he filed a notice of appeal. Some time later, appellant filed a supersedeas bond in the civil action.

## I.

Following the close of the evidence, the trial judge met with counsel and appellant in chambers to discuss requested jury instructions. The trial judge, believing them to be correct statements of the law, informed counsel that he intended to give the hindering and contributing to the delinquency of a minor instructions requested by the State. Both appellant and his attorney explicitly agreed that the

---

2. Appellant testified that he suffered from emphysema and thus could not speak. The officers' testimony lent some support to appellant's testimony; each testified that appellant had varying degrees of difficulty breathing.

3. The docket entries in the civil case were admitted into evidence at appellant's criminal trial.

4. The order incorporating that decision was signed and filed on August 29, 1983.

5. See Maryland Rule 1020.

hindering instruction correctly stated the law.[6]  Neither, however, commented with respect to the proposed instruction on contributing to the delinquency of a minor.[7]  The court later denied appellant's jury instruction requests Nos. 1[8] and 2,[9] stating:

> ... those requests are contrary to the law of the State of Maryland as stated in *Stevenson v. State* and *Montgomery v. State.*  *Stevenson* is 289 Md. 167 [423 A.2d 558 (1980)].  *Montgomery* is 292 Md. 84 [437 A.2d 654 (1981)].  I don't see any dispute as to the law in this case and I will instruct the jury in the absence of such a dispute as to the law of the crime my instructions are binding on them as to the law.  I will so instruct the jury.

Although neither the appellant nor his attorney objected, at that time, to the court's refusal of these requests, appellant did so later, prior to the end of the conference.

The trial court instructed the jury consistent with its expressed intention.[10]  Following the court's instructions,

---

**6.** THE COURT: With respect to request No. 1, I believe that that properly states the law on hindering.  I intend to so instruct the jury.  Any comment, Mr. King, Mr. Sibiga?
   MR. SIBIGA: I think you are correct, I think it does state the proper law.
   MR. KING: I think it does.

**7.** THE COURT: I deny paragraph two.  I grant one.  Is there any comment on that, Mr. King or Mr. Sibiga?
   MR. SIBIGA: No sir.
   MR. KING: No sir.

**8.** Appellant's request No. 1 provided:
   That in the State of Maryland, the jury is both the judge of the law and fact.

**9.** Appellant's request No. 2 provided:
   The jury shall be told they are judges of the law and the fact and that the court's instructions are advisory only.

**10.** With respect to the jury's judicial function, he said:
   Let me start out by telling you that although you may have heard or read that under the Constitution of Maryland a jury, in a criminal case, is the judge of the law as well as the facts, your role as judges of the law is limited in that you are the judges of the law only when there is a sound basis for disputing the law concerning a criminal

the following colloquy occurred at the bench, out of the presence of the jury:

MR. KING: Your Honor I am again going to renew my objection as to the fact that in the State of Maryland the jury is both the judge of law and the facts.

Also, number two, the jury shall be told that they are the judges of the law and the court's instructions are advisory only.

THE COURT: Mr. King, is there anything else?

Let me just address those two. As I indicated to you in our chambers' conference when I reviewed your request for instructions, my reading of the *Montgomery v. State* and *Stevenson v. State* indicates that the instruction that I have given to the jury, with respect to their role as judges of the law, is a proper instruction. I have your exception, sir.

Although the court gave no instructions on such issues and, except for appellant's request No. 10a,[11] none requested, both appellant and the State argued to the jury concerning the effect of the writ of possession and of appellant's

---

offense that is charged. Where, however, there is no dispute as to the law of the crime my instructions on the law are binding upon you and you may not reject them.

In this case there is no dispute as to the law of the crime. Therefore, in this case you are bound by my instructions to you now on the law.

**11.** Appellant's request 10a provided:

jury should be instructed that if they find the defendant had thirty (30) days, under Maryland Rule 1012, to file an appeal from the Court of Special Appeals of Maryland to Judge Hinkle's verdict and judgment of August 18, 1983, that the time would not have been up until September 17, 1983, for such filing of a timely appeal, and that the writ of possession on defendant's house, 4708 Byron Rd., Pikesville, Md. 21208, was premature and unlawful, when issued upon defendant on September 1, 1983, and that clerk of the court or Circuit Court for Baltimore County, was without any authority to take any action against the defendant or his premises until the thirty (30) days had expired from August 18, 1983, date of Judge Hinkle's verdict and judgment against the defendant, in case no. 83 E–43, that is say September 17, 1983, thus rendering said writ of possession null and void ab initio.

appeal of the circuit court's judgment pursuant to which the writ was issued. The State argued that the writ of possession issued as a result of appellant's failure to make required mortgage payments, was a lawful court order and that, absent a supersedeas bond, neither appellant's attempted appeal prior to eviction nor his perfection of that appeal following eviction, could legally have prevented that eviction. Appellant, on the other hand, noting that he ordered the transcript of the proceedings and gave a notice of appeal to the court reporter, contended that he attempted in good faith to appeal. Further, he pointed out that he filed an appeal on September 1st, prior to the expiration of the appeal period and that on the same day on which he perfected his appeal, the trial judge stayed the effect of the writ of possession pending his appeal.

Appellant now argues that there was a dispute between the parties about the law applicable to the case; therefore, the court erroneously instructed that its instructions on the law were binding. The dispute, he asserts, concerned "the legal scope and effect of the writ of possession" and "whether appellant had the right to resist a removal from his home." He reasons that "because he acted in good faith without criminal intent, on the reasonable assumption that he was entitled to remain in his home and to resist being moved from his home", his actions were not criminal. With specific reference to the hindering charge, appellant urges that since it involves interfering with the performance of an officer's "lawful" duties, "if appellant was correct in his legal argument that Officer Windsor and others had no legal right to move him from his house, then appellant could not have been convicted of hindering Officer Windsor." Similarly, regarding contributing to the delinquency of a minor, he says, "If the jury had been allowed to fulfill their role as judges of the law, they may have concluded that appellant and his son lacked the necessary criminal intent to sustain appellant's conviction for that charge."

■ Maryland Courts have consistently held that the trial judge must give requested instructions that correctly state the applicable law and have not been fairly covered in the instructions actually given. *Mack v. State,* 300 Md. 583, 479 A.2d 1344 (1984); *Lansdowne v. State,* 287 Md. 232, 412 A.2d 88 (1980); *Hamilton v. State,* 62 Md.App. 603, 490 A.2d 763 (1983). *See also* Maryland Rule 4–325(c).[12] A trial judge must be afforded the opportunity to correct any misstatement of law, clarify any ambiguity, or correct any inaccuracies which may exist in his instructions. *Leatherwood v. State,* 49 Md.App. 683, 435 A.2d 477 (1981). Therefore, in order to preserve a point for appellate review, the party, in addition to a request for instructions, must object, stating distinctly the grounds for his objection, to the instructions actually given prior to the retirement of the jury. Maryland Rule 4–325(e). *See also Lyles v. State,* 63 Md.App. 376, 492 A.2d 959 (1985).

Appellant has preserved for appellate review the correctness of the court's instructions as to the jury's law-judging function. The question that must be resolved is, what is it that appellant has preserved?

■ Unless the issue preserved involves a dispute of law of the kind, the resolution of which is entrusted to the jury, there is nothing for us to review and, in any event, this assignment of error is meritless. The jury's law-judging function is limited to resolving disputes as to the substantive "law of the crime," which occurs "when an instruction culminates in a dispute as to the proper interpretation of the law of the crime for which there is a sound basis." *Montgomery v. State,* 292 Md. 84, 89, 437 A.2d 654 (1981); *Stevenson v. State,* 289 Md. 167, 423 A.2d 558 (1980).

We pointed out in *Allnutt v. State,* 59 Md. 694, 702, 478 A.2d 321 (1984),

---

12. In pertinent part, Rule 4–325(c) provides:
   The court may, and at the request of any party shall, instruct the jury as to the applicable law and the extent to which the instructions are binding.

A distillation of *Stevenson* and *Montgomery* leads us to conclude that it will be a rare case indeed where there is "a dispute or sound basis for a dispute" as to the "law of the crime."

We concluded that "instances of dispute of the law of the crime are an endangered species rapidly approaching extinction." *Id.* at 703, 478 A.2d 321. We continue to adhere to this view.

■ Appellant may not now dispute the court's instructions defining hindering and contributing to the delinquency of a minor. Both he and his counsel conceded that the definition of hindering given to the jury correctly stated the law and no exception to that definition was taken. Although neither affirmatively and explicitly agreed with the definition of contributing to the delinquency of a minor, neither expressed disagreement and, again, no exception was taken. Moreover, the record does not reflect that there is any sound basis for a dispute as to the definition of those crimes. Appellant did except to the court's refusal to instruct the jury that it was the sole judge of the law; however, that exception did not create a dispute as to the law of the crime where none existed. Furthermore, it could not preserve an issue which had already been waived. We conclude that no issue as to the law of the crime has been preserved for appellate review.

The issues which appellant designates as disputes of law involve the sufficiency of the evidence and the jury's factfinding function. In order to resolve them, the jury had to weigh the credibility of the witnesses and determine the weight of the evidence and apply the law to the facts found. Its choice was between the "facts", including the inferences deducible therefrom, presented by the State and those presented by the defense, and not between conflicting interpretations of the law. The court correctly instructed the jury that it was the sole judge of the facts and that the court's instructions in that regard were advisory only and that

[y]ou are instructed that if you find, after hearing all of the evidence, that the defendant lacked the intent to commit any of the crimes for which he is charged, then you must find him not guilty of such crimes.

Appellant was entitled to no more. We find no error.

## II.

During his closing argument, the prosecutor said:

Now, if you were to accept Mr. Sibiga's way of thinking I think we'd be in a little bit of a turmoil. Mr. Sibiga wants to interpret the law as whichever way he thinks proper, forgetting what the appellate courts and the courts have said in cases. He wants to interpret it the way he wants the law to be. Al Capone could go around and rob banks as easily as anyone if Al Capone made the decision that carrying a gun in your hand is proper. This is what Mr. Sibiga has done. Mr. Sibiga has made the decision that his interpretation of the law is the law.

Appellant now asserts that the prosecutor's comparison of him to Al Capone was inaccurate, irrelevant and highly prejudicial. Conceding that no objection was made to the argument at trial, he nevertheless contends that the lower court's failure, *sua sponte*, to grant a mistrial or to give a curative instruction was reversible error.

We agree that the prosecutor's remarks were "highly improper." They were not fair comment upon the substantive evidence in the case, nor on appellant's credibility as a witness. "They were designed solely to instill in the jury a general antipathy towards appellant, and thus, in intent, exceeded the proper bounds of argument." (citations omitted) *Beard v. State*, 42 Md.App. 276, 289, 399 A.2d 1383 (1979), *Holbrook v. State*, 6 Md.App. 265, 250 A.2d 904 (1969). Having determined that the prosecutor's comments were improper, we must determine whether they "appear likely to have misled or influenced the jury to the prejudice of the accused." *Curry v. State*, 54 Md.App. 250, 257, 458 A.2d 474 (1983). To do so, we must consider the closeness of the case; the centrality of the issue affected by

the error; and the steps taken by the trial judge to mitigate the remarks' effect on the jury. *Wilhelm v. State,* 272 Md. 404, 326 A.2d 707 (1974), citing *Gaither v. United States,* 413 F.2d 1061 (D.C.Cir.1969). We also must give due consideration to the unique position of the trial judge to evaluate and assess the context in which the remarks were made and to determine whether they were, in this case, prejudicial. *Id.*

Turning to the case *sub judice,* the trial judge took no action, *sua sponte.* But neither was the issue affected by the error central to the decision of the case, nor the case describable as close. In addition, the comments of the prosecutor were a "quick passing reference in the context of the overall argument." *Beard v. State, supra.* [42 Md.App.] at 290, 399 A.2d 1383. We conclude that the prosecutor's comments were not so inflammatory as to create a real likelihood of prejudice. We find no abuse of discretion. *Wilhelm, supra.*

### III.

Appellant next argues that the evidence was insufficient to sustain his conviction of hindering and contributing to the delinquency of a minor. We disagree.

The standard of review when the issue is the sufficiency of the evidence is whether, after reviewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Rusk,* 289 Md. 230, 424 A.2d 720 (1981); *Tichnell v. State,* 287 Md. 695, 415 A.2d 830 (1980).

The crime of obstructing or hindering a police officer consists of:

(1) a police officer engaged in the performance of a duty;

(2) an act, or perhaps an omission, by the accused which obstructs or hinders a police officer in the performance of that duty;

(3) knowledge by the accused of facts comprising element (1); and

(4) intent to obstruct or hinder the officer by the act or omission constituting element (2).

*Cover v. State,* 297 Md. 398, 466 A.2d 1276 (1983).

There was ample evidence that Sgt. Windsor was a police officer engaged in the performance of a duty and that appellant had knowledge of those facts. Appellant's argument that, "in view of appellant's difficulty in speaking after he had been removed from the house, it cannot be said that he was even uncooperative by being unable to tell Patrick Sibiga to put the gun down", calls into question elements (2) and (4). His argument overlooks, however, the testimony of Sgt. Miser that, in response to their request that he tell his son to put the gun down, appellant said, "He knows what to do" as well as Sgt. Windsor's testimony that appellant refused to cooperate. Such testimony provides ample evidence of the existence of elements (2) and (4). We find no error.

■ Appellant also complains that the evidence was insufficient to sustain his conviction of contributing to the delinquency of a minor. The only complaint he has as to the sufficiency of the evidence is that it did not indicate or show that he told Patrick to get or use the shotgun. Again, appellant overlooks the testimony of one of the State's witness, in this instance, Chief Deputy Weirs. The trial transcript reveals the following colloquy between the State and Chief Deputy Weirs:

Q. Did he say, Patrick, or did he just say, go get it, or do you recall?

A. My memory is he told Patrick to go get it.

Although this testimony contradicts appellant's testimony and, arguably, is inconsistent with other portions of Chief Deputy Weirs' own testimony, the jury was free to consider it and arrive at a verdict consistent therewith. The evidence, therefore, was sufficient.

## IV.

Appellant finally contends that it was error to deny his motion for judgment of acquittal on the charge of contributing to the delinquency of a minor because the charging document omitted from the charge itself the allegation that appellant was an adult and thus did not allege a cognizable offense. Although no pretrial motion to dismiss the charging document was filed and, notwithstanding that sufficient evidence to show that he was an adult was presented at trial, appellant argues that his motion for judgment of acquittal should have been granted because of this defect.

█ Appellant was charged by means of a statement of charges.[13] The case was captioned:

| STATE OF MARYLAND | VS. John Joseph Sibiga, Sr. 8/7/35 |
| --- | --- |
| | ........................ |
| | (Defendant)          (DOB) |
| Charges: | 4708 Byron Road |
| | ........................ |
| Contributing to Delinquency | (Address) |
| (1) ....................Code 1–3805 | Pikesville, MD. 21208    655–6374 |
| ...... | ........................ |
| | (City, State, Zip)      (Telephone) |
| (2) ....................Code ...... | 0930459 |

In its only count, the statement of charges alleged:

Upon the facts contained in the sworn application of Howard B. Merker, Deputy State's Attorney for Baltimore County, County Courts Building, Towson, Md. 21204, it is formally charged that the above-named defendant John Joseph Sibiga, Sr. (1) on or about September 1, 1983 at 4708 Byron Road, Baltimore County did wilfully commit an act, omission or condition which contributed to, encouraged, caused or intended to cause Patrick Robert Fredericks Sibiga, age eleven, to be brought within the jurisdiction of the courts as a delinquent child against

---

**13.** Maryland Rule 4–201(b) and (c)(3).

the peace, government, and dignity of the State of Maryland.

A charging document must:

> [F]irst, characterize the crime; and second, it must provide such description of the criminal act alleged to have been committed as will inform the accused of the specific conduct with which he is charged, thereby enabling him to defend against the accusation and avoid a second prosecution for the same criminal offense.
>
> (citations omitted)

*Williams v. State,* 302 Md. 787, 791, 490 A.2d 1277 (1985). Where the charging document does not charge or characterize an offense, the defect is jurisdictional and can be raised at anytime. *Id.* at 792, 490 A.2d 1277. On the other hand, if the charging document sufficiently characterizes the offense, any defect in the charging document must be seasonably raised in the trial court or be waived. *Id., See* Maryland Rule 4–252(a). Furthermore,

> Although the customary method of identifying a particular crime charged has been to aver its essential elements in the charging document, that is not the exclusive method, and the use of other words that sufficiently characterize the crime will satisfy the jurisdictional requirement.

*Id.* at 793, 490 A.2d 1277.

The Court of Appeals, in *State v. Chaney,* 304 Md. 21, 497 A.2d 152 (1985), found sufficient an indictment which did not contain the words, "felonious", "malice aforethought" and "murder," in contravention of Article 27, § 616. Noting that implicit in the words, "did wilfully and deliberately, with premeditation, kill and slay" is that the killing was unlawful, the Court said:

> Although defective under § 616, we think these averments were sufficient, for jurisdictional purposes, to invest the circuit court with power to proceed to trial on the then unchallenged indictment—as it reasonably apprised

**84**

*Chaney*, consistent with the notice requirements of Article 21 of the Maryland Declaration of Rights, that he was charged with unlawful homicide and specifically, by its reference to §§ 407–410 of Art. 27, with first degree murder.

*Id.*, at 26, 497 A.2d 152.

■ Turning to the case *sub judice*, appellant concedes that the only allegation missing from the statement of charges was one that appellant was an adult. Reference to the caption of the statement of charges makes clear, from appellant's date of birth, that he was an adult. Because, "in ascertaining the existence of jurisdiction in the circuit court, we consider the [statement of charges] in its entirety," for jurisdictional purposes, the charge was sufficient. *Id.*

Just as a defect in an indictment which might have subjected the indictment to dismissal on timely pretrial motion does not affect the court's jurisdiction to try the offense charged, such a defect in this statement of charges does not render insufficient otherwise competent evidence. *Id.* There was clearly sufficient evidence presented at trial specifically, that appellant had lived at his home for 23 years, to show that appellant was an adult. The unseasonably challenged defect in the statement of charges does not negate this evidence. The trial court correctly denied appellant's motion for judgment of acquittal.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.