### PEOPLE ex rel. FRIED v. FRANK.

(Supreme Court, Special Term, New York County. July, 1911.)

OBSTRUCTING JUSTICE (§ 7*)—POLICE OFFICERS—ENTERING POOLROOM.

Police officers being charged by City Charter of Greater New York (Laws 1901, c. 466) § 315, with the duty of preventing the commission of crime, and pool selling being under Penal Law (Consol. Laws 1909, c. 40) § 986, a misdemeanor, one having admitted to policemen that he was conducting a certain place as a poolroom, and that he was going to open and use it that day for pool selling, and having then started to enter it with another after beckoning still others to follow, the officers had the right, and it was their duty, to accompany him into his premises, to prevent the pool selling; so that he, by blocking with his body their entrance, obstructed a police officer in the performance of his duty, in violation of section 1824.

[Ed. Note.—For other cases, see Obstructing Justice, Cent. Dig. § 16; Dec. Dig. § 7.*]

Habeas corpus, on the relation of Charles Fried, against Henry Frank. Hearing on return of writ. Proceedings dismissed, and relator remanded.

Max D. Steuer, for relator.

Archibald R. Watson, Corp. Counsel (Leon G. Godley, of counsel), for respondent.

GIEGERICH, J. The relator having been arrested, charged with obstructing a police officer in the performance of his duties contrary to the provisions of section 1824 of the Penal Law, having had a hearing before a city magistrate, and having been committed to the city prison after such hearing, has procured a writ of habeas corpus, which is now here for argument.

On the 14th day of July, 1911, a police lieutenant, under direction of his superior and with several officers to assist him, visited the premises No. 171 West Forty-Eighth street, in the borough of Manhattan, New York City, for the purpose of inspecting the same upon suspicion that a poolroom was conducted there. The place suspected was above a saloon on the corner, and was reached by a hallway opening from the street and leading upstairs. Upon arriving at the place, the lieutenant found the street door locked, rang the bell, but received no answer. After the officers had waited in the street near this door 15 or 20 minutes, the relator came out of the saloon, whereupon the lieutenant said to him that he had known him as being connected with the poolroom upstairs, and that he wished to be candid with him, and to ask him if he intended to do business that day or not, and that, if he said he would not, then the officer would take his men away. In reply to this, the relator admitted that he represented the people there, and that he intended to go on and do business. Some time after that, the relator, with another man, made their way to the door in question and beckoned to some people to come upstairs. They rapped on the door, which was opened to admit them, and when the police officers attempted to pass through with them the relator and his companion blocked the doorway and extended their arms so that the police could not enter. Thereupon the officers arrested the relator, and, after a hearing before a city magistrate, he was committed to answer a charge of violating section 1824 of the Penal Law. Subsequently the relator procured a writ of habeas corpus, which is now before me for disposition. The evidence, properly interpreted, and as the committing magistrate interpreted it as appears from his remarks upon the record, shows an admission on the relator's part, corroborated, if an admission needs corroboration, by many significant facts, that he was conducting a poolroom, and further shows that he was about to enter his place for the purpose of carrying on his business of pool selling. Section 986 of the Penal Law makes pool selling a misdemeanor. Section 315 of the Greater New York Charter provides as follows:

"It is hereby made the duty of the police department and force, at all times of day and night, and the members of such force are hereby thereunto empowered, to especially preserve the public peace, prevent crime, detect and arrest offenders, suppress riots, mobs and insurrections, disperse unlawful or dangerous assemblages, and assemblages which obstruct the free passage of public streets, sidewalks, parks and places; protect the rights of persons and property, guard the public health, preserve order at elections and all public

meetings and assemblages; regulate, direct, control, restrict and direct the movement of all teams, horses, carts, wagons, automobiles and all other vehicles in streets, bridges, squares, parks and public places, for the facilitation of traffic and the convenience of the public as well as the proper protection of human life and health, and to that end the police commissioner shall make such rules and regulations for the conduct of vehicular traffic in the use of the public streets, squares and avenues as he may deem necessary; remove all nuisances in the public streets, parks and highways; arrest all street mendicants and beggars; provide proper police attendance at fires; assist, advise and protect emigrants, strangers and travelers in public streets, at steamboat and ship landings and at railroad stations; carefully observe and inspect all places of public amusement, all places of business having excise or other licenses to carry on any business; all houses of ill fame or prostitution, and houses where common prostitutes resort or reside; all lottery offices, policy shops and places where lottery tickets or lottery policies are sold or offered for sale; all gambling houses, cockpits, ratpits, and public common dance houses, and to repress and restrain all unlawful and disorderly conduct or practices therein; enforce and prevent the violation of all laws and ordinances in force in said city; and for these purposes, to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses."

It will be seen from the foregoing provisions that it is not the whole duty of police officers to detect and cause the punishment of crime after it is committed; they are also charged with the duty of preventing the commission of crime. This duty of prevention is no less important than the duty of detection. Weiss v. Herlihy, 23 App. Div. 608, 612, 49 N. Y. Supp. 81. For failure to take proper steps to perform this duty they may themselves become criminally liable. People v. Herlihy, 66 App. Div. 534, 73 N. Y. Supp. 236, affirmed on opinion below 170 N. Y. 584, 63 N. E. 1120; People v. Diamond, 72 App. Div. 281, 76 N. Y. Supp. 57, affirmed without opinion 175 N. Y. 517, 67 N. E. 1087. The police officers therefore had the right, and it was their duty, under the circumstances, to accompany the relator into his premises for the purpose of preventing the commission of the crime he had declared his intention of committing, and his interference with them in the performance of such duty was a clear violation of section 1824 of the Penal Law, and he was properly held by the magistrate.

In conclusion, a word of further explanation may not be amiss, lest the police misconstrue this decision and give it too broad a meaning. From some things appearing in the record of the proceedings before the magistrate it would appear that the intention was to make a test case to determine the right of the police, under section 315 of the charter, to enter and inspect premises where it was suspected that gambling or other unlawful acts were being committed. But all I can pass upon is the narrow and exceptional case that is presented to me, where the person complaining himself admitted that the place sought to be entered was a poolroom, and that he was going to open and use it that day, and then started to enter the place with another after beckoning still others to follow him, and when he himself presented the obstacle which the police met in a peaceful and unobstructed entrance. If he had denied that he was going to open a poolroom that day, or even if he had remained silent, then, no matter what the police suspected or what evidence they had that he was in fact in the habit

of conducting a poolroom, it may be they would have had no right to enter forcibly without a warrant. But that is not the case before me. Here there is no question of fact. The police officers say that the relator made these admissions, and he does not deny it. He cannot be permitted in the same breath to avow his intention to proceed to the commission of the crime and to object to the insistence of police officers that they be permitted to accompany him and prevent the intended criminal act.

The proceedings are therefore dismissed, and the relator remanded.