32 A.3d 44

**Gerald Thomas TITUS, Jr.**

v.

**STATE of Maryland.**

**No. 6, Sept. Term, 2011.**

Court of Appeals of Maryland.

Nov. 29, 2011.

Ben Miller, Assistant Public Defender (Paul B. DeWolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Jeremy M. McCoy, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, * MURPHY, ADKINS and BARBERA, JJ.

GREENE, J.

On May 1, 2009, Petitioner, Gerald Thomas Titus, Jr., was convicted by a jury in the Circuit Court for Carroll County of obstructing and hindering, driving under the influence of alcohol per se, driving while impaired by alcohol, and giving a false or fictitious name to a uniformed police officer.[1] On appeal to the Court of Special Appeals, Petitioner challenged the sufficiency of the evidence to sustain his conviction for obstructing and hindering, as well as the legality of the sentence he received for his conviction of driving under the influence of alcohol per se. In an unreported opinion, the Court of Special Appeals affirmed Petitioner's conviction and sentence. We granted *certiorari* to answer the following question:

> Was the evidence that Petitioner gave a false name to a police officer during a traffic stop sufficient to convict him of obstructing or hindering a police officer in the performance of his duty?

We answer this question in the negative. In cases involving the common law offense of obstructing and hindering a police officer in the performance of his duty, Maryland courts have adopted a four-part test requiring proof beyond a reasonable doubt of the following elements: (1) a police officer engaged in the performance of a duty; (2) an act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty; (3) knowledge by the accused of facts comprising element (1); and (4) intent to obstruct or hinder the officer by the act or omission constituting element

---

* Murphy, J., now retired, participated in the hearing and conference of this case while an active member of this Court; he did not participate in the decision and adoption of this opinion.

1. The jury acquitted Petitioner of the charges of use of a false government identification document, driving under the influence of alcohol, driving with a revoked license, driving with a suspended license, and failure to drive right of center.

(2). *Cover v. State*, 297 Md. 398, 413, 466 A.2d 1276, 1284 (1983). For the reasons discussed below, we shall hold that the evidence presented by the State at trial with regard to the charge of obstructing and hindering was insufficient to prove the necessary elements beyond a reasonable doubt. Petitioner's conviction for this offense is, therefore, reversed.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 9, 2008, Corporal Mario Devivio (Devivio), of the Carroll County Sheriff's Department, was on routine patrol at approximately 10:45 p.m. when he observed the operators of two motorcycles traveling parallel with each other in the southbound lane on Littlestown Pike. Devivio was traveling behind the motorcycles and observed one of them cross the double yellow line by five feet numerous times. Devivio then proceeded to perform a traffic stop of the operator of that motorcycle.

After Devivio initiated the traffic stop, he ran the vehicle information and found that it was registered to Gerald Thomas Titus, Jr. Devivio approached the driver of the motorcycle, who he identified at trial as Petitioner. When Devivio informed Petitioner of the purpose of the stop and requested his license and registration, Petitioner handed Devivio a Florida driver's license with Petitioner's picture and the name Frederick John Karr, Jr.[2] Although the record is not entirely clear on this issue, at some point during the evening of the traffic stop, Devivio discovered that Gerald Titus's license was suspended and revoked in the state of Maryland, according to MVA records. Upon being questioned by Devivio, Petitioner indicated that "Gerald Titus was his roommate, and he was borrowing the motorcycle." Not long after the traffic stop was initiated, Devivio "detected a strong odor of an alcoholic beverage emitting from [Petitioner's] breath, or person" and observed that Petitioner had "bloodshot, glassy eyes." Devi-

---

2. During cross-examination, Devivio testified that he did not make a copy of the Florida license that was displayed by Petitioner on the night of the traffic stop.

vio questioned Petitioner about his activities that evening, and Petitioner indicated that he was coming from an Inn and that he had consumed two beers. At Devivio's request, Petitioner agreed to perform Standardized Field Sobriety Testing. Devivio testified that he asked Petitioner whether he had any past injuries or other problems that would prevent or hinder him from performing the tests, and Petitioner indicated that he did not. On cross-examination, however, Devivio admitted that Petitioner had mentioned having "bad ankles."

Devivio testified that he first administered the horizontal gaze nystagmus test by explaining it to Petitioner and then having him perform the test. At the conclusion of the first test, Devivio testified that Petitioner "indicated six out of six clues," which was an indicator that Petitioner was "under the influence of an alcohol, drug, or prescription drug." The next test administered by Devivio was the walk and turn test. Before the test had begun and while Devivio was explaining how to perform it, Petitioner "stepped off line, [and] raised his arms for balance." During the test, Petitioner raised his arms for balance, missed one of the initial steps, took too many steps on his approach back, and failed to count his steps out loud. Finally, Devivio administered the one-leg stand test. Petitioner attempted to begin the test before being instructed to do so, and while performing the test Petitioner initially failed to raise his foot high enough and put his foot down several times during the test. As a result of Petitioner's performance on the tests, Devivio placed Petitioner under arrest.

Devivio transported Petitioner to the Carroll County Sheriff's Office Detention Center and read to him an advisement of rights form, explaining to Petitioner his "rights prior to tak[ing] . . . a breath test." Petitioner agreed to take a breath test and signed the name "Frederick Karr" on the form. Corporal Jesse Clagett (Clagett), an intoximeter operator employed by the Westminster City Police, testified that he was working on the night of Petitioner's arrest. While being questioned on direct examination regarding the function of an intoximeter, Clagett agreed that it was used to determine

"how much alcohol a person has in his system[.]" Clagett identified Petitioner at trial as the person to whom he administered a breath test on the evening of July 9, 2008. Pursuant to department procedures, Clagett checked Petitioner's mouth to "make sure there [were] no contaminants," and he located a dime that had been concealed in Petitioner's mouth. Clagett then instructed Petitioner to spit out the coin, and Clagett began the twenty-minute observation period over again before administering the test. Clagett explained the test to Petitioner before obtaining two samples from him, the results of which were .09 grams of alcohol per 210 liters of breath, which is above "the legal limit for DUI" in Maryland. The name at the top of the notification of the test results, which was admitted into evidence at trial, is "John Karr Frederick, Jr.," and Clagett testified that he witnessed Petitioner sign the bottom of the notification form.

On August 26, 2008, an unrelated search warrant was executed at Petitioner's residence, and Devivio was present as an "assisting officer." Devivio testified that during the execution of the search warrant, he saw Petitioner, who Devivio identified at trial as the same person he arrested at the traffic stop. Devivio claimed that at some point after the night of the traffic stop, "another officer came to [him] and said that 'The person you arrested [ha]s an alias.' And he had prior knowledge of [Petitioner], [he] gave me his real name." Later in his testimony on cross-examination, Devivio indicated that Lieutenant John Shippee (Shippee), with the Carroll County Sheriff's Office, told Devivio that Petitioner had given him a false name. At trial, Shippee identified Petitioner as the subject of the search warrant that had been executed. Shippee testified that during his interaction with Petitioner while the search warrant was being executed, he asked Petitioner "if he was going by the name of Titus today, or Mr. Karr," and Petitioner "responded with profanity, and that was it." Devivio testified that in response to the information from Shippee regarding Petitioner's use of a false name, he "went to the MVA, typed up his real name, [and] came up with a color photo[.]" After verifying the address associated with Petitioner's name and

that Petitioner was the registered owner of the motorcycle he had stopped on the evening of July 9, 2008, Devivio "made a determination that it was an alias that [Petitioner] was using, [a] false name." Devivio indicated on cross-examination, however, that he "didn't go back and recharge [Petitioner]."

Petitioner was convicted by a jury of obstructing and hindering,[3] driving under the influence of alcohol per se, driving while impaired by alcohol, and giving a false or fictitious name to a uniformed police officer. On appeal, the intermediate

---

3. Petitioner was initially charged by Criminal Information with two counts of obstructing and hindering. Count 8 charged him with obstruction of "Deputy Devivio," the officer who performed the traffic stop, and Count 9 charged him with obstruction of "Corporal Clagett," the officer who administered the breathalyzer test. At trial, these offenses were renumbered as Counts 1 and 2. During trial, the State presented evidence that Petitioner gave Devivio a false name and that Petitioner had a dime concealed in his mouth before the breathalyzer test began. At the conclusion of the State's case-in-chief, defense counsel moved for judgment of acquittal on both counts of obstructing and hindering. The court denied the motion at that time, and again denied the motion when it was renewed at the close of all of the evidence. After the jury had been instructed and had retired to commence deliberations, however, the judge noted on the record, "[W]hile conducting a meeting with counsel in chambers for the jury instructions, I reconsidered my decision, and granted the motion as directed verdict as to one count of common law offense of obstructing and hindering[.]" With regard to which count of obstructing and hindering was before the jury in rendering its guilty verdict, the Court of Special Appeals ultimately concluded:

> Based on our review of the record, including the docket entries, the criminal information, opening statements and closing arguments, the court's instructions, the court's action of merging the false name charge into the obstruction and hindering charge at sentencing, as well as [Petitioner's] arguments in this [c]ourt, we are persuaded that the jury found [Petitioner] guilty of obstructing and hindering Corporal Devivio on the date of the traffic stop by giving the name Frederick John Karr, instead of Gerald Thomas Titus.

We agree with the determination made by the intermediate appellate court, and we note that both the State and Petitioner in their Briefs to this Court focused on the facts surrounding the traffic stop and subsequent investigation by Devivio in their arguments regarding sufficiency of the evidence for Petitioner's conviction of obstructing and hindering. We therefore limit our analysis to those facts and the charge of obstructing and hindering that resulted from Petitioner giving to Corporal Devivio the name Frederick John Karr, instead of Gerald Thomas Titus.

appellate court affirmed Petitioner's conviction for obstructing and hindering and the sentence that Petitioner received for his conviction of driving under the influence of alcohol per se. This Court subsequently granted Petitioner's writ of certiorari. *Titus v. State,* 418 Md. 587, 16 A.3d 977 (2011).

## DISCUSSION

### A. Standard of Review

▆▆▆▆▆ This Court reviews an issue regarding the sufficiency of the evidence in a criminal trial by determining "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979) (citation omitted); *see Allen v. State,* 402 Md. 59, 71, 935 A.2d 421, 428 (2007); *Rivers v. State,* 393 Md. 569, 580, 903 A.2d 908, 915 (2006); *Moye v. State,* 369 Md. 2, 12, 796 A.2d 821, 827 (2002). The purpose is not to "undertake a review of the record that would amount to, in essence, a retrial of the case." *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336, 337 (1994). Rather, because the finder of fact has " 'the unique opportunity to view the evidence and to observe first-hand the demeanor and to assess the credibility of witnesses during their live testimony, we do not re-weigh the credibility of witnesses or attempt to resolve any conflicts in the evidence.' " *State v. Mayers,* 417 Md. 449, 466, 10 A.3d 782, 791 (2010) (quoting *Smith v. State,* 415 Md. 174, 185, 999 A.2d 986, 992 (2010)); *see Albrecht,* 336 Md. at 478, 649 A.2d at 337 (holding that evidence is reviewed "in the light most favorable to the State, giving due regard to the trial court's finding of facts, its resolution of conflicting evidence, and, significantly, its opportunity to observe and assess the credibility of witnesses") (internal citations omitted). We recognize that "the finder of fact has the ability to choose among differing inferences that might possibly be made from a factual situation," *Smith,* 415 Md. at 183, 999 A.2d at 991 (internal quotation omitted), and we therefore "defer to any

possible reasonable inferences the [trier of fact] could have drawn from the admitted evidence and need not decide whether the [trier of fact] could have drawn other inferences from the evidence, refused to draw inferences, or whether we would have drawn different inferences from the evidence." *Mayers,* 417 Md. at 466, 10 A.3d at 791–92 (citing *State v. Smith,* 374 Md. 527, 557, 823 A.2d 664, 682 (2003)); *see Bible v. State,* 411 Md. 138, 156, 982 A.2d 348, 358 (2009); *State v. Suddith,* 379 Md. 425, 430, 842 A.2d 716, 719 (2004).

**B. Common Law Offense of Obstructing and Hindering**

██ In Maryland, obstructing and hindering a law enforcement officer in the performance of his duty is a common law offense. *See Cover v. State,* 297 Md. 398, 400, 466 A.2d 1276, 1277 (1983); *Busch v. State,* 289 Md. 669, 675, 426 A.2d 954, 957 (1981); *Roddy v. Finnegan,* 43 Md. 490, 505 (1876). Maryland courts have recognized and explained three categories of the offense of obstructing and hindering a police officer, as suggested by K.W. Lidstone in *Offence of Obstruction: Obstructing Freedom?,* [1983] Crim. L.R. 29, 30. The first category is positive direct obstruction, which includes "those cases in which the constable acts directly against the citizen or his property and is physically resisted." *Id.* The second category is passive direct obstruction, "in which the constable seeks to make the citizen act directly, and the citizen refuses or fails to act as required." *Id.* Lastly, the third category is positive indirect obstruction, which involves situations where police are "not acting directly against the citizen but are acting indirectly against other citizens who are, or may be, about to commit offences against the criminal law, and the citizen does an act which obstructs them in their general duty to prevent or detect crime, intending to frustrate the police operation." *Id.*

██ In *Cover v. State,* 297 Md. 398, 466 A.2d 1276 (1983), this Court outlined a four-part test for analyzing the offense of obstructing and hindering a police officer in the performance of his duty:

(1) A police officer engaged in the performance of a duty;

(2) An act, or perhaps an omission, by the accused which obstructs or hinders the officer in the performance of that duty;

(3) Knowledge by the accused of facts comprising element (1); and

(4) Intent to obstruct or hinder the officer by the act or omission constituting element (2).

*Cover,* 297 Md. at 413, 466 A.2d at 1284. While we did not explicitly state in Cover that the four-part test would be applicable to each category of the offense of obstructing and hindering an officer, we did not foreclose this interpretation, and moreover, all of the Maryland cases discussing the common law offense of obstructing and hindering subsequent to our opinion in *Cover* have applied the four-part test, regardless of the category of obstruction involved. *See, e.g., Attorney Grievance Comm'n v. Sheinbein,* 372 Md. 224, 247–48, 812 A.2d 981, 994–95 (2002) (involving charges of positive indirect obstruction); *In re Antoine H.,* 319 Md. 101, 108 n. 4, 570 A.2d 1239, 1242 n. 4 (1990) (involving charges of positive indirect obstruction); *Nieves v. State,* 160 Md.App. 647, 656–57, 866 A.2d 870, 876 (2004) (involving charges of passive direct obstruction), *aff'd on other grounds, State v. Nieves,* 383 Md. 573, 861 A.2d 62 (2004). Thus, we hold that the four-part test is applicable to the circumstances of the instant case. A discussion of each of the elements comprising the offense of obstructing and hindering an officer is instructive for our analysis of the facts in this case.

The first element that must be proved by the State, at trial, beyond a reasonable doubt is that there was a police officer engaged in the performance of a duty at the time of the offense. In examining what actions constitute the performance of a "duty," the court in *Lamb v. State,* 141 Md.App. 610, 626, 786 A.2d 783, 792 (2001) (quotation omitted), determined that "a police 'duty' sufficient to trigger a hindering charge need not be an arrest." Relying on the reasoning of a Connecticut court in defining the scope of an officer's duty, the

court in *Glover v. State,* 88 Md.App. 393, 594 A.2d 1224 (1991), explained, " '[T]he test is whether the officer is acting in good faith within the scope of his [or her] duties as an officer or is pursuing a personal intent or frolic of his [or her] own.' " *Glover,* 88 Md.App. at 406, 594 A.2d at 1230 (quoting *State v. Biller,* 5 Conn.App. 616, 501 A.2d 1218, 1221 (1985) (considering the question of whether a police officer is performing an official duty, sufficient to satisfy that element of obstructing and hindering, if he is making an illegal arrest)); *see State v. Richardson,* 38 N.H. 208, 212 (1859) (holding that "[t]here is no such sacredness attached to personal property as can justify, in its defence, resistance to an authorized officer of the law, acting in good faith, under lawful process"). In discussing the duty element of obstructing and hindering, the court in *People ex rel. Fried v. Frank,* 73 Misc. 1, 4, 130 N.Y.S. 807 (N.Y.Spec. Term 1911), explained that "it is not the whole duty of police officers to detect and cause the punishment of crime after it is committed; they are also charged with the duty of preventing the commission of crime." Thus, in a broad sense, "provided that the means adopted [by an officer] do not in themselves break the law, it will be difficult to establish that any action taken by a constable is outside his [or her] duty." *Lamb,* 141 Md.App. at 625, 786 A.2d at 792 (quotation omitted).

The second element of the offense is an act or omission that obstructs or hinders an officer in the performance of a duty. This element requires proof of "how [a defendant's] act *actually obstructed and hindered* the police officers . . . based on the totality of the circumstances[.]" *Nieves,* 160 Md.App. at 658, 866 A.2d at 876–77 (emphasis added). In *Cover,* this Court reviewed the sufficiency of the evidence for a conviction of obstructing and hindering an officer in the performance of his duty. *Cover,* 297 Md. at 400, 466 A.2d at 1277. In that case, a plainclothes officer was observing an individual "acting in a generally suspicious manner" in an area where a burglary had recently been perpetrated. *Cover,* 297 Md. at 400, 404, 466 A.2d at 1277, 1279. While the officer was attempting to perform surveillance, he became aware of the defendant sit-

ting in her vehicle in a nearby lot. *Cover*, 297 Md. at 402, 466 A.2d at 1278. During the surveillance, the defendant started her engine and turned on her headlights, at which point the officer approached the defendant to identify himself as a police officer and to inform the defendant of the purpose of his presence in the area. *Cover*, 297 Md. at 403, 466 A.2d at 1279. The officer instructed the defendant to leave the area to avoid interfering with his investigation. *Id.* The defendant drove away, passing by the suspect of the investigation, but apparently without any conversation exchanged between them. *Cover*, 297 Md. at 403–04, 466 A.2d at 1279. The officer then heard the defendant "sounding her car's horn and continu[ing] to sound it for one and one-half to two minutes," Cover, 297 Md. at 404, 466 A.2d at 1279, allegedly in an attempt to "warn[ ] the subject that he was being observed by the police," according to the State's theory at trial. *Cover*, 297 Md. at 414, 466 A.2d at 1284. The officer continued to observe the suspect during this time until he lost sight of the suspect and could no longer locate him. *Cover*, 297 Md. at 404, 466 A.2d at 1279.

In holding that the State's evidence was insufficient to convict the defendant of obstructing and hindering an officer, this Court in *Cover* cited with approval the reasoning adopted by the court in *Hinchliffe v. Sheldon*, [1955] 3 All E.R. 406 (D.C.) at 408, which defined "obstructing" as an act or omission "making it more difficult for the police to carry out their duties." *Cover*, 297 Md. at 410, 466 A.2d at 1282. Finding the court's reasoning in *Green v. Moore*, [1982] 1 All E.R. 428 (D.C.), instructive, we determined it was "necessary to define an act of hindering to include an act which deprived [the officer] of the opportunity of seeing whether, in normal circumstances, the unidentified subject would attempt to [break the law]." *Cover*, 297 Md. at 414, 466 A.2d at 1284. While we determined that there was sufficient evidence to support a finding that it was the defendant's intent to warn the suspect of police presence, "the evidence was insufficient to support a finding beyond a reasonable doubt that the sounding of the car horn was understood as a warning *and in fact hindered* [the

officer] from further observing the subject." *Cover*, 297 Md. at 415, 466 A.2d at 1285 (emphasis added).[4]

Several treatises are instructive in defining and explaining the terms necessary to constitute the element of actual obstruction or hindrance of an officer. Lewis Hochheimer, *in his* treatise, stated that the act of obstructing, in the context of the offense of obstructing and hindering, "includes any impediment, direct or indirect, active or passive, to the execution of process or exercise of authority." Lewis Hochheimer, *The Law of Crimes and Criminal Procedure* 436 (2d ed. 1904). In distinguishing the offense of resisting arrest from that of obstructing and hindering, it has been noted that "[t]o constitute obstruction of an officer in the performance of his duties it is not necessary that there be an actual or technical assault upon the officer, but there must be acts clearly indicating an intention on the part of [the] accused to prevent the officer from performing his duty. . . ." 2 Hascal R. Brill, *Cyclopedia of Criminal Law* 1783 (1923). This Court in *Busch v. State*, 289 Md. 669, 677, 426 A.2d, 954, 958 (1981) (quotation omitted), recognized that "resisting an officer in the performance of his duties was an offense that could occur even before there was an arrest." Thus, it follows that "the offense of resisting

---

**4.** This Court and the Court of Special Appeals have similarly held in other cases that the evidence presented by the State at trial was insufficient to support a conviction for obstructing and hindering an officer in the performance of his duty in situations where the State failed to show that the officer was actually obstructed or hindered in the performance of his duty. *See, e.g., DiPino v. Davis*, 354 Md. 18, 35, 729 A.2d 354, 363 (1999) (holding that "[c]ommunications that are both intended and effective to place an officer, then in the performance of an official duty, in immediate jeopardy may very well form the basis of a charge of hindering. Even assuming that [the officers in this case] were, in fact, in the performance of some official duty, however, there was utterly no evidence of either such an intent or such an effect in this case."); *Antoine H.*, 319 Md. at 109, 570 A.2d at 1242 (holding that although the defendant failed to cooperate with the police in their execution of an arrest warrant, "the facts . . . are not adequate to support a finding that the police were actually hindered or obstructed . . . in the attempt to arrest [the subject of the warrant]"); *Nieves*, 160 Md.App. at 657, 866 A.2d at 876 (2004) (holding that in giving an officer the correct last name and date of birth during a traffic stop, the defendant "did not actually cause any hindrance").

arrest requires proof of an act different from or additional to the acts necessary to prove the offense of resisting, hindering, or obstructing an officer in the performance of his duties[.]" *Busch,* 289 Md. at 678, 426 A.2d at 959; *see* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* 555 (3d ed. 1982) (noting that "there is a distinction between avoidance and resistance or obstruction" and that "[o]bstruction of justice may be committed by interference with an officer's discharge of duties other than that of making an arrest").

Based on the language of the discussion in the foregoing authorities, we look to the meaning of several key words and phrases as defined in both legal and general purpose dictionaries. Black's Law Dictionary defines "obstruction of justice" generally as "[i]nterference with the orderly administration of law and justice[.]" *Black's Law Dictionary* 1107 (8th ed. 2004); *see also* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 611 (2d ed. 1995) (defining "obstruction of justice" as "interference with the orderly administration of law"). Black's Law Dictionary defines the word "obstruction" as "[t]he act of impeding or hindering something; interference." *Black's Law, supra,* at 1107. As defined by Webster's Dictionary, the meaning of the word "obstruct" includes "[t]o impede, retard, or interfere with[.]" *Webster's II New College Dictionary* 773 (3d ed. 2005). The word "hinder" is defined by Webster's Dictionary as "t[o] impede or delay the progress of." *Webster's, supra,* at 536.

■■ The third element of the offense of obstructing and hindering is knowledge by the accused that he or she is being confronted by an officer in the performance of a duty. In proving this element, "[m]ere knowledge that the person allegedly hindered was a police officer does not suffice; there also must be knowledge that the officer was engaged in performing police duties when hindered." *DiPino v. Davis,* 354 Md. 18, 28, 729 A.2d 354, 359 (1999) (internal quotation omitted). The trier of fact is permitted to make reasonable inferences from the surrounding facts and circumstances presented by the State at trial to come to the conclusion that the

defendant was aware that his or her actions were directed toward an officer engaged in the performance of official duties. *See Hall v. United States,* 235 F.2d 248, 249 (5th Cir.1956) (holding that based on the facts of the case, including statements made to the defendant and the display of a gold police badge in plain view, "[a]dequate evidence was adduced from which the jury was justified in finding that Hall was aware that the men approaching him for questioning were federal officers"); *DiPino,* 354 Md. at 36, 729 A.2d at 363 (holding that "[i]n terms of their observed and observable conduct at the time, it was wholly unreasonable for [the officer] to conclude, or even suspect, that [the defendant] was aware that she and [another officer] were then and there engaged in the performance of an official duty").

The fourth element of the offense is an intent on the part of the accused to obstruct or hinder the officer in the performance of his or her duty. In the case of *Attorney Grievance Comm'n v. Sheinbein,* 372 Md. 224, 812 A.2d 981 (2002), this Court relied on the established legal principle that "[u]nless there is evidence presented to the contrary, the law presumes that a person intends the natur[al] and probable consequences of his acts." *Sheinbein,* 372 Md. at 245, 812 A.2d at 993 (internal quotations and citations omitted). We further held that in analyzing the intent element in the offense of obstructing and hindering, such an intent "may be inferred from the defendant's voluntary and knowing commission of an act which is forbidden by law." *Sheinbein,* 372 Md. at 247, 812 A.2d at 994. Thus, the trier of fact can infer from a defendant's actions and the surrounding circumstances whether the defendant had the requisite intent to obstruct or hinder an officer in the performance of his or her duties. *See, e.g., Sheinbein,* 372 Md. at 248, 812 A.2d at 994–95 (holding that in light of evidence indicating that Sheinbein knew his son had committed a murder, that he knew the police were actively investigating his son, that he brought his son's passport to him, and that he bought a plane ticket for his son to fly to Israel, there was sufficient evidence to conclude that Sheinbein had the intent to hinder or obstruct the investigation and

prosecution of his son for murder); *Nieves,* 160 Md.App. at 657, 866 A.2d at 876 (holding that although Nieves initially provided officers with his middle name instead of his first name at the time of the traffic stop, Nieves also provided his correct last name and date of birth, and therefore "[n]othing about [Nieves's] act could possibly lead a reasonably cautious person to believe [Nieves] was intending to obstruct or hinder a police officer") (internal quotation omitted); *Sibiga v. State,* 65 Md.App. 69, 81, 499 A.2d 484, 490 (1985) (holding that testimony presented at trial indicating that when facing arrest the defendant refused to cooperate and that when the defendant's son retrieved a gun the defendant did not assist police in telling him to put it down, "provides ample evidence of the existence of [the intent element]").

## C. Analysis of the Instant Case

Petitioner argues that the evidence presented at trial was insufficient to sustain his conviction for obstructing and hindering an officer in the performance of his duty. Petitioner's argument focuses on the second element of the offense, which Petitioner claims requires that the officer be *actually* obstructed or hindered in the performance of his duty. Petitioner maintains that "[a]lthough [he] provided Devivio with a false name, at no time was Devivio obstructed or hindered in performing his duty." In making this argument, Petitioner construes the officer's duty as that of performing a traffic stop and subsequent arrest, stating that Devivio was not actually obstructed or hindered because "[h]e conducted a traffic stop and completed it successfully."

Petitioner cites several cases in support of his position that actual obstruction or hindrance of an officer is required to sustain the offense, including *In re Antoine H.,* 319 Md. 101, 570 A.2d 1239 (1990); *Cover v. State,* 297 Md. 398, 466 A.2d 1276 (1983); and *Nieves v. State,* 160 Md.App. 647, 866 A.2d 870 (2004). In asserting that there was no evidence of actual obstruction or hindrance presented by the State at trial, Petitioner states that "[t]he evidence is clear that regardless of the name petitioner provided to Devivio, petitioner was

arrested and charged in connection with the instant case and that Devivio was not obstructed or hindered in placing petitioner under arrest." Analogizing the facts and rationale of *Nieves* and *Antoine H.*, Petitioner argues that the convictions in those cases were "overturned because the police in those cases were able to accomplish what they had set out to do," even though there might have been a slight delay. Thus, according to Petitioner, "Devivio was never actually obstructed as he was able to effect a traffic stop, investigate petitioner for suspicion of drunk driving, and place petitioner under arrest at the scene without any delay." Petitioner also highlights the fact that even after Devivio learned that Petitioner had been using an alias, he did not "[take] any further actions based upon this knowledge and, to the contrary, he expressly testified that he 'didn't go back and re-charge' petitioner."

In contrast to Petitioner's claims, the State argues that there was actual obstruction. In making this argument, the State asserts that "[t]he fact that Titus was eventually brought to justice does not mean that the lawful duties of the police were not actually obstructed or hindered by his obfuscation of his identity and his lies to the officer...." Rather, the State maintains, because Petitioner provided a false name, Devivio was prevented from discovering through a records check at the time of the stop that Petitioner was driving with a suspended and revoked license, as well as other details regarding Petitioner's past criminal history that "could have affected Corporal Devivio's decision-making with regard to possible charging and pre-trial detention of [Petitioner]." Because of Petitioner's actions, Devivio was under the mistaken belief for some amount of time following the traffic stop that Petitioner was Karr, not Titus.

The State cites several cases from other jurisdictions which reach the conclusion that the statutory offense of obstructing and hindering could be proven in a situation where a defendant's actions make it more difficult for an officer to perform his or her duties. *See Rumph v. State*, 544 So.2d 1150, 1152 (Fla.Dist.Ct.App.1989); *State v. Caldwell*, 154 Wis.2d 683, 454 N.W.2d 13, 17 (App.1990). The State argues, in reliance on

these cases, that when Devivio discovered Petitioner had used an alias, "which resulted in the officer conducting a subsequent MVA records check and the filing of a criminal information a month and a half after the traffic stop," this evidence was sufficient to show an actual obstruction or hindrance.

In the alternative, the State contends that the four-part test announced in *Cover* is limited to circumstances involving positive indirect obstruction, or obstruction involving actions of third parties. In support of this position, the State quotes from our opinion in *Cover*, discussing positive indirect obstruction, in which we stated that "where the alleged hindering is as indirect as that presented here, we cannot conclude that the crime may be based solely on intent, without regard to whether there has in fact been some degree of hindrance." *Cover*, 297 Md. at 416, 466 A.2d at 1285. The State therefore maintains that in circumstances such as those presented in the instant case,[5] "evidence of an act or omission by the target of police action that is intended to obstruct or hinder a police officer in the performance of his or her duties, is sufficient to sustain a conviction." The State cites various out-of-state cases which, in their interpretations of the statutory offense of obstructing and hindering an officer in the performance of his duty, have determined that actual obstruction or hindrance is not required. *See Williams v. State*, 253 Ark. 973, 490 S.W.2d 117, 123 (1973) (determining that "any ... act willfully done with intent to deter, hinder or prevent an officer from the performance of his duty constitutes a violation"); *State v. Harris*, 4 Conn.Cir.Ct. 534, 236 A.2d 479, 483 (1967) (holding that "[t]he purpose of the statute, which had its origin in the common law, is to enforce orderly behavior in the important mission of preserving the peace; and any act that is intended

---

**5.** While the State asserts that the category of obstructing and hindering exhibited in the instant case is positive direct obstruction, Petitioner's actions would, in fact, fall more appropriately under the category of passive direct obstruction. Because the State seems to suggest that the relevant distinction is between direct and indirect obstruction, however, a mis-characterization by the State of the offense in the instant case does not appear to change the State's position, and it does not change our analysis.

to thwart that purpose is violative of the statute"); *State v. Taylor*, 38 N.J.Super. 6, 118 A.2d 36, 48 (App.Div.1955) (holding that in determining whether there is sufficient evidence to support a conviction for obstructing and hindering "it is not a question ... whether [the officers] were actually prevented from performing their duties"). Thus, according to the State, "the fact that Titus acted with knowledge and intent to obstruct Corporal Devivio" was sufficient to sustain Petitioner's conviction for obstructing and hindering, regardless of whether there was actual obstruction or hindrance of Devivio.

On appeal to the Court of Special Appeals, Petitioner challenged the sufficiency of the evidence in supporting his conviction for obstructing and hindering an officer in the performance of his duty. In affirming Petitioner's conviction, the intermediate appellate court distinguished *Antoine H.* and *Nieves*, two of the cases relied upon by Petitioner in this case. The court held that the facts of Petitioner's case are unlike those in *Antoine H.* and *Nieves* because the actions taken by Petitioner do not constitute "a short-lived disruption of a police investigation." In addition, unlike the defendant in *Nieves*, Petitioner provided a false name to Devivio. The Court of Special Appeals went on to conclude that all of the elements of the offense were satisfied because Devivio was clearly a police officer engaged in the performance of a duty, Devivio was obstructed or hindered in the performance of that duty, and Petitioner acted "with knowledge and intent to obstruct Corporal Devivio in the lawful performance of his duties." The court further held that key evidence presented at trial indicating that Petitioner told Devivio that Titus was his roommate and that Petitioner provided a Florida driver's license with a false name "establishe[d] a more than sufficient basis from which a rational fact-finder could have concluded that [Petitioner] intended to [and did] deceive Corporal Devivio about his true identity." We disagree with the Court of Special Appeals, and we hold that the element of actual obstruction was not satisfied by the evidence presented by the State at trial.

■ Many of the elements of the common law offense of obstructing and hindering are easily satisfied by the evidence presented by the State at trial, and are largely not contested by the parties. Viewing the evidence produced at trial in the light most favorable to the State, there was sufficient evidence to support the conclusion that at the time of the offense Devivio was a police officer engaged in the performance of his duties and that Petitioner had knowledge of these facts. Devivio testified at trial that he was on "routine patrol" at the time of the traffic stop. When Devivio initiated the traffic stop of Petitioner he approached Petitioner and explained "why he was being stopped." After conducting a number of field sobriety tests on which Petitioner performed poorly, Devivio placed Petitioner under arrest and transported him to the police station for purposes of conducting a breath test. Under the totality of the circumstances, based on the foregoing evidence adduced at trial and the reasonable inferences taken from that evidence, it was reasonable for the jury to conclude that these elements of the offense of obstructing and hindering were proven beyond a reasonable doubt.

■ It was also reasonable for the jury to find, beyond a reasonable doubt, that Petitioner had the intent to obstruct or hinder Devivio in the performance of his duties. This intent can be gleaned from Petitioner's actions in light of his knowledge that he was interacting with a police officer performing a traffic stop. Devivio testified at trial that when he asked Petitioner for his license and registration, Petitioner handed him a Florida driver's license with Petitioner's picture and the name "Frederick John Karr, Jr." After being questioned by Devivio regarding ownership of the motorcycle, which was registered in the name of Gerald Titus, Petitioner replied that "Gerald Titus was his roommate, and he was borrowing the motorcycle." These facts reasonably give rise to the inference that Petitioner intended to obstruct or hinder Devivio in the course of the traffic stop and subsequent investigation.

The main contention between the State and Petitioner is the element of the offense of obstructing and hindering that

requires actual obstruction or hindrance of an officer in performing his or her duties. While the State contends that this element of the four-part test announced in *Cover* is inapplicable to the instant case, Maryland case law has consistently held that the four-part test, *including the element of actual obstruction or hindrance,* is applicable to the common law offense of obstructing and hindering a police officer. *See Sheinbein,* 372 Md. at 242–43, 812 A.2d at 991; *Antoine H.,* 319 Md. at 104, 570 A.2d at 1240; *Cover,* 297 Md. at 413, 466 A.2d at 1284; *Nieves,* 160 Md.App. at 656, 866 A.2d at 875; *Wildberger v. State,* 74 Md.App. 107, 114, 536 A.2d 718, 721 (1988); *Sibiga v. State,* 65 Md.App. 69, 80–81, 499 A.2d 484, 490 (1985). We hold, therefore, that the test is applicable regardless of which category of the offense is under analysis.[6] While Maryland courts have frequently discussed the three categories of the offense of obstructing and hindering, no court has made a distinction in the applicable test based on the category of the offense, and we decline to do so now.

The State's reliance on out-of-state courts' interpretations of the statutory offense of obstructing and hindering, as it is worded in each of the various state statutes referenced, is misplaced. While many of those statutes may have their origins in the common law, as noted by the State in its Brief, the courts' interpretations and analyses are necessarily based upon the precise wording of the statutes. Maryland courts have made clear in their analysis of the common law offense, however, that a determination of actual obstruction or hindrance is necessary to support a conviction. *See Sheinbein,* 372 Md. at 244, 812 A.2d at 992 (holding that "there is no doubt that respondent's actions in devising and facilitating his son's departure to Israel *obstructed and hindered* [the officer] in the performance of her lawful duties") (emphasis added);

---

6. For purposes of this discussion, we note that the conduct of Petitioner during the traffic stop would fall under the category of passive direct obstruction, which was defined by Lidstone as encompassing "the situation in which the constable seeks to make the citizen act directly, and the citizen refuses or fails to act as required." K.W. Lidstone, *Offence of Obstruction: Obstructing Freedom?,* [1983] Crim. L.R. 29, 30.

*Antoine H.*, 319 Md. at 109, 570 A.2d at 1242 (concluding that the evidence was not sufficient "to support a finding that the police were *actually hindered or obstructed* ") (emphasis added); *Cover*, 297 Md. at 415, 466 A.2d at 1285 (holding that there was insufficient evidence to conclude that the defendant's actions *"in fact hindered* [the officer] from further observ[ation]") (emphasis added); *Nieves*, 160 Md.App. at 657, 866 A.2d at 876 (holding that the defendant's "act *did not actually cause any hindrance* ") (emphasis added).

 To perform an analysis of whether the evidence adduced at trial is sufficient to support a finding of actual obstruction or hindrance of an officer in the performance of his duties, it is necessary to determine the scope of an officer's duty in the particular circumstances presented by each case. Petitioner asserts that Devivio's duty was to perform the traffic stop and to arrest Petitioner if he had probable cause to do so. Petitioner's argument, however, defines the scope of Devivio's duty during the traffic stop and the subsequent arrest and investigation too narrowly. The investigation of the matter did not end when Petitioner was arrested. Rather, at some point after the traffic stop, Devivio was required to perform some action to officially charge Petitioner with the offenses committed. This part of Devivio's duty would certainly include filing criminal charges against the person actually responsible for committing the offenses. Thus, it is appropriate to analyze the issue of actual obstruction in light of this view of the officer's duties.

In applying Maryland case law, guidance from various treatises, and applicable dictionary definitions that help to construe the common law, we hold that the evidence presented by the State at trial was not sufficient to prove beyond a reasonable doubt that Devivio was actually obstructed or hindered in the performance of his duties. From our reading of the record, Devivio's actions after the traffic stop were, at best, uncertain. If Devivio did take additional steps in response to information from Shippee that Petitioner had given him a false name or had used an alias, these steps are unclear. Devivio testified

on cross-examination that he looked through MVA records and found a picture of Petitioner, which he used to determine that Petitioner had given him a false name on the night of the stop. There is no indication in the record, however, of how this new information impacted the investigative process, much less how it obstructed or hindered the investigative process. Devivio simply stated that "after further investigation," he determined that Petitioner had used an alias during the traffic stop. There is no indication in the record, however, of what that investigation entailed. There is no clear testimony regarding how Devivio was "impede[d]," how the progress of his investigation was delayed, or the manner in which Petitioner's actions "interfere[d] with" his investigation.

The State speculates that Devivio may have acted differently in conducting the traffic stop had he been aware of Petitioner's true identity and been able to discover the status of Petitioner's license and his criminal history. There is no testimony from Devivio, however, regarding how information about a vehicle operator's driving record or criminal history would impact a traffic stop generally, or how Petitioner's driving record and criminal history specifically would have altered his approach on the evening of July 9, 2008. In addition, it is unclear from the record what steps, if any, Devivio took to correct the error of presumably having charged the crimes committed by Petitioner under a different name. Devivio testified only that he "didn't go back and re-charge [Petitioner]." It would be unreasonable to conclude that a reasonable jury could make the inference that the charging document was amended, rather than re-filed, if that was in fact the case. If this Court is unable to surmise the course of Devivio's actions in his investigation of Petitioner based on the evidence in the record, surely the jury could not have made a finding beyond a reasonable doubt based on the facts and evidence presented at trial as to what actions Devivio did or did not perform.

It was the State's burden to prove beyond a reasonable doubt that Petitioner committed the offense of obstructing and hindering a law enforcement officer. To meet this burden of

proof, the State should have introduced evidence at trial to show how Petitioner's conduct actually obstructed or hindered that investigation. By failing to even question Devivio about how he was actually obstructed or hindered in performing his duties, or to establish the manner and degree of obstruction or hindrance, there was insufficient evidence presented at trial for the trier of fact to conclude that Petitioner's conduct actually obstructed and hindered Devivio. In the absence of any testimony from Devivio, or other evidence presented by the State, regarding how Petitioner's actions actually obstructed or hindered Devivio in the performance of his duties, Petitioner's conviction for obstructing and hindering a law enforcement officer must be reversed.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR CARROLL COUNTY. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY CARROLL COUNTY.**